UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, a Michigan
corporation; HOWMEDICA OSTEONICS
CORP., a New Jersey corporation,

       Plaintiffs,

v.

CHRISTOPHER RIDGEWAY, an individual;
RICHARD STEITZER, an individual; BIOMET,
INC., an Indiana corporation,

       Defendants.
_____/

Case No.  1:13-CV-1066

HON. ROBERT HOLMES BELL

**O P I N I O N**

    This action filed by Plaintiffs Stryker Corporation and Howmedica Osteonics Corp. (collectively "Stryker"), comes before the Court on Defendant Christopher Ridgeway's motions to bar communications, to dismiss for lack of personal jurisdiction, and to sever and transfer venue.  (ECF Nos. 22, 37, 38.)  For the reasons that follow, the motion to bar communications will be denied as moot, and the motions to dismiss for lack of personal jurisdiction and to sever or transfer will be denied.

I.

    Defendant Christopher Ridgeway was hired by Stryker in November 2001 as a sales representative in the New Orleans territory – East Division.  (Krupinski Decl. ¶ 5, ECF No. 51-1.)  On January 1, 2012, Ridgeway was promoted to the position of District Sales

Manager for Stryker's Craniomaxillofacial ("CMF") and Neuro Spine ("NSE") divisions. (Mercado Decl. ¶ 15, ECF No. 50-3; Krupinski Decl. ¶ 10.)  Ridgeway was terminated from his employment with Stryker in September 2013.  (Krupinski Decl. ¶ 35.)

Stryker filed this action against Defendants Ridgeway, Biomet, Inc., and Richard Steitzer, alleging breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with contract.

## II.

Ridgeway has filed a motion to bar Stryker from directly communicating with him. (ECF No. 22.)  There appears to be no dispute that Stryker's counsel copied Ridgeway on an email to Ridgeway's counsel.

Stryker has explained that its communication to Ridgeway was the result of inadvertently responding "reply all" to an email from Ridgeway's counsel, a courtesy copy of which had been sent to Ridgeway.  Stryker has apologized for sending the communication to Ridgway and has advised that it did not intend to and does not plan on communicating with Ridgeway in the future.  (Pls.' Resp. ¶¶ 8-9; ECF No. 25.)  Stryker also notes that had Ridgeway ascertained whether his motion would be opposed, as he was required to do under Local Rule 7.1(d), it would have apologized, explained the oversight, and given assurances that it would not contact Ridgeway in the future.  (Pls.' Resp. ¶ 11.)

Plaintiffs' attorneys' direct contact of an opposing party who is represented falls below the standard of care required by this Court.  However, inasmuch as Ridgeway's motion

does not seek anything more than he would have obtained by communicating with Plaintiffs' counsel before filing the motion, the Court will deny Defendant's motion to bar communications as moot.

### III.

Defendant Ridgeway has filed a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss all claims against him for lack of personal jurisdiction.[1] (ECF No. 37.)

Jurisdiction in this case based on diversity of citizenship. (Am. Compl. ¶ 22.) "In a diversity case, a plaintiff must satisfy the state-law requirements for personal jurisdiction." *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012). The exercise of personal jurisdiction is valid only if it meets both the forum state's long-arm statute and constitutional due process requirements. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011). The plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012). "A district court, in its discretion 'may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'"

---

[1] Defendant Ridgeway's previously-filed motions to dismiss for lack of personal jurisdiction (ECF No. 14, 15) were not renewed after Plaintiffs filed their first amended complaint (ECF No. 23). Accordingly, the Court will deny the previously-filed motions to dismiss (ECF Nos. 14 & 15) as moot.

3

*Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). If the motion is decided on the written submissions alone, the burden on the plaintiff is relatively slight; dismissal is proper only if the plaintiff's alleged facts, construed in the light most favorable to the plaintiff, collectively fail to state a prima facie case for jurisdiction. *Id.* If the motion is decided after a pretrial-evidentiary hearing, the more-exacting preponderance-of-the-evidence standard applies. *Schneider*, 669 F.3d at 697. In reviewing a motion to dismiss for lack of personal jurisdiction, the Court interprets the facts in a light most favorable to the nonmovant and may not consider facts that conflict with those offered by the plaintiff. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)).

A.  <u>Did Ridgeway Agree to Jurisdiction in a Non-Compete Agreement</u>?

In its first amended complaint, Stryker asserts that the Court has personal jurisdiction over Defendant Ridgeway pursuant to the Employee Non-Compete Agreement (the "Non-Compete Agreement"), through which Ridgeway consented to personal jurisdiction and venue in this Court.[2] Both the Michigan long-arm statute and the Due Process Clause permit

---

[2]Stryker's amended complaint alleges personal jurisdiction and venue as follows:

> This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(a) pursuant to the Employee Non-Compete Agreement (the "Agreement"), through which both Ridgeway and Steitzer consented to personal jurisdiction and venue in this Court, and because Biomet has committed and continues to commit tortious acts in and/or related to this State and regularly conducts business in Michigan. Additionally,
> (continued...)

4

the exercise of general jurisdiction over an individual who has consented to jurisdiction in the court through a forum selection clause. *See* Mich. Comp. Laws §§ 600.701(3), 600.745(2); *Potomac Leasing Co. v. The French Connection Shops, Inc.*, 431 N.W.2d 214, 216 (Mich. Ct. App. 1988) ("It has been recognized by both this Court and by the United States Supreme Court that parties may agree, even in advance of litigation, to submit to the personal jurisdiction of a particular forum."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

Ridgeway contends that the unsigned Non-Compete Agreement attached to Stryker's amended complaint is not sufficient to show that Ridgeway ever signed an agreement consenting to jurisdiction in this Court.

Stryker does not have a copy of an actual and complete non-compete agreement signed by Ridgeway. However, it contends that it does have Ridgeway's execution page for the Non-Compete Agreement. Stryker relies on two documents in support of this allegation: (1) a 4-page FAX from Ridgeway to Stryker with a cover page signed by Ridgeway that includes the message "Here are signed copies of my offer letter, non-compete agreement, and code of conduct," and three additional pages: an offer letter signed by Ridgeway, an

---

[2](...continued)
Stryker's principal place of business is in Kalamazoo, Michigan, and it regularly conducts business in Michigan, and Howmedica's CMF division is headquartered in Portage, Michigan.

(Am. Compl. ¶ 23, ECF No. 23.)

unidentified page signed and dated by Ridgeway, and a certification regarding the Code of Conduct signed by Ridgeway (Am. Compl., Ex. A); and (2) an unsigned Employee Non-Compete Agreement (Am. Compl., Ex. B). The unsigned Employee Non-Compete Agreement contains the following provision:

> 12. Employee consents and agrees that any and all litigation between him/her and company relating to this Agreement shall take place in the State of Michigan and employee expressly consents to the jurisdiction of the federal and/or state courts in Michigan.

(Am. Compl., Ex. B, Agrmt. ¶ 12.) The Agreement also provides that it "shall be construed in accordance with and governed for all purposes by the law of the State of Michigan." (Agrmt. ¶ 13.)

Ridgeway contends that the FAX and the eight-page unsigned agreement are two separate and unrelated documents, and that they are insufficient to show that Ridgeway signed this agreement consenting to jurisdiction in this Court. Ridgeway admits that the signature on the unidentified execution page attached to the FAX is his, and his FAX provides evidence that he did sign a non-compete agreement. Ridgeway nevertheless argues that because Stryker has not produced testimony from anyone who was involved in his hiring, there is no evidence that the signature page was part of the non-compete agreement, and that even if there was, there is no evidence regarding the substance of the non-compete agreement. Ridgeway notes that the form agreement Stryker relies on does not have the same title as the form referenced in his offer letter. His offer letter references a "Nondisclosure and Noncompetition Agreement" while the form agreement Stryker relies on is entitled

6

"Employee Non-Compete Agreement." Ridgeway has also presented evidence that nine Stryker employees told him that he did not have a non-compete agreement. (Ridgeway Decl. ¶ 3, Mot., Ex. 1, ECF No. 37; MCKay Decl. ¶¶ 3,4, ECF No. 18-1.) Further, Ridgeway has presented evidence that on several occasions after beginning employment, he was asked to sign a non-compete agreement, but he always declined. (Ridgeway Decl. ¶ 4.)

Sarah Krupinski, Senior Manager of Human Resources for Stryker CMF, has admitted that in 2012, in response to Ridgeway's inquiry, she told him that she did not see a non-compete agreement in his personnel file; she explains that at the time she did not recognize the unidentified signature page attached to the FAX as evidence of the non-compete agreement. (Krupinski Supp. Decl. ¶ 16, ECF No. 50-5.) Nevertheless, contrary to Ridgeway's assertions, there is substantial evidence to support a finding that he did sign such an agreement. The document number on the eight pages of the form Non-Compete Agreement are identical to the document number on the signature page returned by Ridgeway. (Am. Compl., Exs. A, B.) The signature page returned by Ridgeway is numbered page 9, which is consistent with the pagination of the eight-page form Non-Compete Agreement. Stryker has also presented evidence that its policy at the time it entered into its employment relationship with Ridgeway was to require all sales representatives to execute a non-compete agreement, or their employment offer would be rescinded. (Krupinski Supp. Decl. ¶ 8.) Stryker has also presented evidence that the Non-Compete Agreement attached as Exhibit B to the complaint is the same form Non-Compete Agreement, with the same

terms and the same document number that was entered into by all 38 newly-hired CMF sales representatives between 2000 and 2005. (Krupinski Supp. Decl. ¶¶ 30-32.)

Ridgeway contends that the only explanation for Stryker's failure to produce his signed non-compete agreement is that such a document does not exist, or that Stryker destroyed it. The Court disagrees. Stryker has given a plausible explanation for the lack of a signed non-compete agreement. According to Krupinski, because Ridgeway only returned the signature page to his Agreement and did not return a copy of the full Non-Compete Agreement sent to him with his offer letter, only the signature page was maintained in his personnel file. (Krupinski Supp. Decl. ¶¶ 11, 13.) Ridgeway's FAX reflects that the employment package that was emailed to him contained at least sixteen pages, while his return email consisted of only four pages.

The Court is satisfied that Stryker has made a prima facie showing that Ridgeway signed a copy of the same Non-Compete Agreement that is attached as Exhibit B to Stryker's Amended Complaint, and that by doing so he agreed to the jurisdiction of this Court. *See ViSalus, Inc. v. Smith*, No. 13-10631, 2013 WL 2156031 (E.D. Mich. May 17, 2013) (holding that forum selection clause in a registration agreement signed online was enforceable). Although Ridgeway has requested the Court to hold an evidentiary hearing and to permit discovery limited to the issue of whether there is an agreement under which he consented to jurisdiction, the Court finds that neither discovery nor an evidentiary hearing is necessary in as much as Ridgeway has not denied signing a non-compete agreement, he has not denied

8

that his signature on Exhibit A is genuine, he has not denied signing the non-compete agreement attached as Exhibit B to the amended complaint, he has not identified any amendments he negotiated to Exhibit B, and he has not identified any other evidence that he would seek to discover or to present that would undermine Stryker's prima facie showing that he signed the form Non-Compete Agreement and agreed to this Court's jurisdiction.

B. Is the Agreement Enforceable?

Ridgeway contends that even if Stryker has made a prima facie showing that he signed the form Non-Compete Agreement at the beginning of his employment, the forum selection clause is not enforceable because he lives and works in Louisiana, and the forum selection clause violates a Louisiana statute that prohibits forum selection clauses in employment contracts, La. Rev. Stat. § 23:921(A).[3]

---

[3]The Louisiana statute provides:

(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment . . . shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. Rev. Stat. § 23:921(A).

9

"'[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.'" *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 417 (1996)). If the forum selection clause is procedural it would be governed by federal law. The Sixth Circuit has held that forum selection clauses "significantly implicate federal procedural issues," and that therefore, in a diversity suit where the forum selection clause is not raised to obtain personal jurisdiction, the enforceability of the forum selection clause is governed by federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Under federal law, forum selection clauses are prima facie valid. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *see also Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013) ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."). There is no doubt that, if the issue is governed by federal law is applied, the forum selection clause is enforceable.

However, when a forum selection clause provides the sole basis for the exercise of personal jurisdiction, the Sixth Circuit has expressed some uncertainty as to whether the issue is substantive or procedural. *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306-07 (6th Cir. 2007). Rather than determining whether the forum selection clause is governed by federal or state law, the Sixth Circuit advises addressing the immediate issue of personal jurisdiction, which is governed by state law. *Id.* at 307-08 (citing *Intera Corp. v.*

*Henderson*, 428 F.3d 605, 615 (6th Cir. 2005)).[4]

The Non-Compete Agreement specifies that the employee consents to the jurisdiction of federal and state courts in Michigan, and further specifies that the Agreement "shall be construed in accordance with and governed for all purposes by the law of the State of Michigan." (Am. Compl., Ex. B ¶¶ 12, 13.) Michigan courts "generally enforce contractual forum-selection clauses," and "[a] party seeking to avoid a contractual forum-selection clause bears a heavy burden of showing that the clause should not be enforced." *Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 689 (Mich. Ct. App. 2006).

Ridgeway has not suggested that the forum selection clause would not be enforceable under Michigan law.[5] Instead he contends that Michigan law should not apply. Ridgeway

---

[4] *Wong* did not overrule *Preferred Capital*. *Wong*, 589 F.3d at 828 n.6.

[5] Under Michigan law, to avoid enforcement of the forum selection clause, Ridgeway would have to meet the requirements of section 745(2) of Michigan's Revised Judicature Act which provides:

> If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:
> (a) The court has power under the law of this state to entertain the action.
> (b) This state is a reasonably convenient place for the trial of the action.
> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
> (d) The defendant is served with process as provided by court rules.

Mich. Comp. Laws § 600.745(2).

11

contends that Louisiana law should control because Louisiana has a fundamental policy embodied in La. Rev. Stat. § 23:921 that invalidates the non-compete agreement and the forum selection clause.

When a conflict of law arises in a diversity action, the choice-of-law rules of the forum state govern. *Performance Contracting*, 750 F.3d at 611. In deciding contract choice-of-law issues, Michigan courts are guided by the policies expressed in the Restatement (Second) of Conflicts of Laws §§ 187, 188. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Under the Restatement, the contract choice of law is binding unless

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2).

Ridgeway argues that the forum selection clause fails because it violates a fundamental Louisiana policy prohibiting the enforcement of such clauses. The Court must accordingly determine whether Louisiana has a "materially greater interest" in the forum selection clause, and whether application of Michigan law would be contrary to "fundamental" Louisiana public policy.

Ridgeway resides in Louisiana and conducted all of his work in Louisiana. Nevertheless, the Court cannot say that Louisiana's interest is materially greater than Michigan's inasmuch as Stryker, the former employer who asserts it has been wronged, is based in Michigan and Michigan has an interest in enforcing its employers' non-compete agreements and forum selection clauses.

The Court also finds that application of Michigan law would not be fundamentally contrary to Louisiana public policy. The Sixth Circuit has cautioned that courts should "move cautiously when asked to hold contract clauses unenforceable on public policy grounds." *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 362 (6th Cir. 1993) (quoting *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1139 (6th Cir. 1991)). The Louisiana Supreme Court has expressed its opinion that "Louisiana Revised Statute 23:921A(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction." *Sawicki v. D/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001); *see also Lim v. Offshore Specialty Fabricators, Inc*., 404 F.3d 898, 906 (5th Cir. 2005) (noting that § 23:921(A)(2) demonstrates a "strong Louisiana public policy concerning forum selection clauses"). However, the *Sawicki* Court also held that the portion of § 23:921(A)(2) concerning the enforceability of forum selection clauses is a procedural, rather than a substantive provision. 802 So.2d at 604. Contractual choice-of-law provisions incorporate only substantive law, not procedural provisions.

13

*Wallace Harware Co. v. Abrams*, 223 F.3d 382, 396 (6th Cir. 2000) (citing *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998)). Ridgeway has not persuaded the Court that Michigan courts would choose to apply Louisiana's procedural provisions over its own. *See Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 448 (N.D.N.Y. 2007) (declining to apply Louisiana law regarding forum selection clauses); *but see United Rentals (N. Am.), Inc. v. Myers*, No. 3:03CV589, 2003 WL 23507021, at *3 (D. Conn. Apr. 22, 2003) (choosing not to apply Connecticut law because non-competition, forum selection, and choice of law clauses contravened Louisiana public policy). The Court is satisfied that Stryker has made a prima facie showing that the Court can exercise personal jurisdiction over Ridgeway pursuant to the forum selection clause of the Non-Compete Agreement.

B. <u>Transaction of Business or Causing Harm in the State</u>

Stryker contends that the forum selection clause is not the sole basis for the exercise of personal jurisdiction in this case. Stryker contends that the Court can also exercise personal jurisdiction over Ridgeway because he conducted business in the state and because he caused harm within the state.

In light of the Court's determination that Ridgeway consented to jurisdiction, the Court need not consider any alternative basis for the exercise of personal jurisdiction over him. However, in an exercise of caution, the Court believes it is appropriate to note that Stryker has also presented a prima facie case for jurisdiction under the Michigan Long Arm Statute.

14

The Michigan long-arm statute provides for the exercise of limited personal jurisdiction over an individual who transacts any business within the state, Mich. Comp. Laws 600.705(1), and over an individual who has caused consequences to occur in the state resulting in an action for tort, Mich. Comp. Laws § 600.705(2). The transaction of "any" business under § 705(1) includes "each" and "every" and "comprehends the slightest" act of business. *Sifers v. Horen*, 188 N.W.2d 623, 624, n.2 (Mich. 1971)

In *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 681 (E.D. Mich. 2012), the court held that Michigan's long-arm statute authorized the exercise of limited personal jurisdiction over defendants where the complaint alleged that they misappropriated trade secrets and confidential information thereby causing consequences in Michigan. *See also*, *Ciena Corp. v. Jarrard*, 203 F.3d 312, 317 (4th Cir. 2000) (holding that due process may permit the exercise of personal jurisdiction over a nonresident who misappropriated trade secrets from an employer in the forum state). In *Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645 (E.D. Mich. 2007), the Oregon-based defendant was hired by a Michigan company, attended training in Michigan, had regular communications with his Michigan supervisors, and routinely accessed information on Michigan-based computer servers. The court held "there can be little doubt that Noretto's alleged breach of the Agreement and alleged misappropriation of trade secrets have a direct effect on Michigan based Kelly Services, Inc." and that his contacts were "patently sufficient to surmount the 'transaction of any business within the state' threshold for personal jurisdiction under the Michigan long arm statute." *Id.* at 652-53.

Stryker alleges claims against Ridgeway in its amended complaint for breach of contract (Count 1), breach of fiduciary duty (Count 3), and misappropriation of trade secrets (Count 4). Stryker has presented evidence that Ridgeway was hired by a Michigan company; he reported to a leadership team located in Michigan; he was paid out of Michigan; he sold products that were ordered through and distributed from Michigan; he came to Michigan on at least three occasions for training and for business; his work email, CMF and NSE strategy documents, and the CMF and NSE shared drive were located on Stryker's computers in Michigan. (Dean Bergy Decl. ¶¶ 3, 7, ECF No. 50-1; Mercado Supp. Decl. ¶¶ 7, 8, 9, 14; Peck Decl. ¶¶ 5-10.)   This evidence is sufficient to establish a prima facie case that Ridgeway conducted business in Michigan.

Stryker has also presented evidence that Ridgeway devoted more time to his side businesses than to his work for Stryker; exploited relationships with Stryker's customers to sell them medical devices from his side business; interfered with Stryker's hiring process; diverted potential Stryker sales representatives for use in his side business; solicited Stryker employees to work for Ridgeway or Biomet; solicited Stryker customers to move their business to Biomet; failed to return Stryker confidential information; shared Stryker's confidential information including customer preferences, product usage, customer needs, and product comparison evaluations with Biomet; used Stryker's confidential pricing to offer Biomet products for sale to Stryker's customers at a significant discount; and fraudulently manipulated the billing process at one of Stryker's largest customers. (Mercado Decl. ¶¶ 33-

16

40, 48-52, ECF No. 50-3; Mercado Supp. Decl. ¶¶ 17, 20, 30, ECF No. 50-2; Krupinski Decl. ¶¶ 38-40, ECF No. 51-1).  Stryker has also presented evidence that as a result of Ridgeway's actions Stryker was injured in Michigan because it paid Ridgeway bonuses and commissions that he did not earn; lost out on future product sales; suffered damage to its customer relationships; and experienced a significant decline in its business in Louisiana.  (Mercado Decl. ¶ 47; Mercado Supp. Decl. ¶ 29).  This evidence is sufficient to establish a prima facie case that Ridgeway caused consequences to occur in the state resulting in an action for tort.

The Court is satisfied that Stryker has made a prima facie showing that this action arises out of Ridgeway's transaction of business in Michigan and his conduct in causing consequences to occur in the state resulting in an action for tort, and that personal jurisdiction is also proper under §§ 705(1) and (2) of the Michigan long-arm statute.

D.  Discovery and a Hearing

Although Ridgeway has requested discovery and a hearing, the Court is not convinced that a hearing is necessary.  Ridgeway has not denied signing the non-compete agreement nor has he indicated that he negotiated a change to the normal Stryker non-compete agreement.  Neither has he contested Stryker's evidence concerning his contacts with Stryker in Michigan.  In the absence of some factual issue that might be clarified at a hearing, the Court observes no need for a hearing and no basis for not deciding this motion on the basis of the documents presented.  Stryker has presented prima facie  evidence that the Court has personal jurisdiction.  Accordingly, Ridgeway's motion to dismiss for lack of personal jurisdiction will be denied.

17

## IV.

Ridgeway has also filed a motion to sever the claims against him from the claims against the other defendants on the grounds of misjoinder under Rule 21, and to transfer the claims against him to the United States District Court for the Eastern District of Louisiana on grounds of forum non conveniens under 28 U.S.C. § 1404(a).  (ECF No. 38.)  Stryker opposes the motion.  (ECF No. 49.)

Ridgeway asserts that there is a misjoinder of claims because the claims against Steitzer and Ridgeway are unrelated.  Ridgeway was a salesman in Louisiana and Steitzer was a salesman in New York.  Ridgeway asserts that the mere fact that they both went to work for Biomet is not sufficient to tie Ridgeway and Steitzer together.

In considering a Rule 21 motion to sever, courts look to Rule 20 for guidance.  *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir.2010); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997) (applying the requirements of Rule 20 to a motion to sever under Rule 21).  Rule 20 provides that persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  "[I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical

relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*, 677 F.3d at 1358. "[J]oinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Ridgeway's motion to sever focuses only on the lack of a relationship between Ridgeway and Steitzer, and fails to consider the claims against Biomet. Stryker's complaint addresses an alleged scheme by Biomet, using Ridgeway and Steitzer, to erode Stryker's customer relationships, to raid Stryker's NSE and CMF sales teams, and to sabotage Stryker's ability to compete. (Am. Compl., Intro.) Stryker alleges that Ridgeway and Steitzer conspired with Biomet to convert Stryker employees to work for Biomet, to interfere with Stryker's ability to hire new employees, to sabotage Stryker's existing customer relationships, and to provide Stryker's confidential information to Biomet. (*Id.*) The Court is satisfied that there is a logical relationship between Stryker's claims against the three defendants, and that there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. Accordingly, Ridgeway's motion to sever will be denied.

Ridgeway's motion to transfer does not request a transfer of the entire case to Louisiana. He is only requesting transfer of the claims against him. Because Ridgeway's motion to sever is being denied, his motion to transfer must be denied as well. A case can only be transferred pursuant to 28 U.S.C. § 1404(a) to another district where the case might

19

have been brought, or to which all partieis have consented, and Ridgeway has not attempted to show that Steitzer is subject to personal jurisdiction in Louisiana or that he has consented to the transfer of the case against him to Louisiana.

For the reasons stated, Defendant Ridgeway's motion to bar communications will be denied as moot, and his motions to dismiss for lack of personal jurisdiction and to sever or transfer will be denied.

An order consistent with this opinion will be entered.


Dated: July 21, 2014                                        /s/ Robert Holmes Bell
                                                            ROBERT HOLMES BELL
                                                            UNITED STATES DISTRICT JUDGE