IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **STRYKER CORPORATION**, a Michigan corporation; **HOWMEDICA OSTEONICS CORP.**, a New Jersey corporation;<br><br>Plaintiffs,<br><br>v.<br><br>**CHRISTOPHER RIDGEWAY**, an individual; **RICHARD STEITZER**, an individual; **BIOMET, INC.**, an Indiana corporation;<br><br>Defendants. | Case No. 1:13-cv-01066<br><br>The Honorable Robert Holmes Bell |

## PLAINTIFFS' MOTION TO DISMISS RIDGEWAY'S COUNTERCLAIMS

Plaintiffs STRYKER CORPORATION and HOWMEDICA OSTEONICS CORP. (collectively, "Stryker"), by their undersigned attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the counterclaims alleged by Defendant CHRISTOPHER RIDGEWAY ("Ridgeway"). In support of this Motion, Stryker contemporaneously files Defendants' Memorandum of Law in Support and state as follows:

1.  Stryker filed this lawsuit to, among other things, enforce a non-compete agreement that Ridgeway admits to signing prior to his employment with Howmedica ("Agreement"). (*See* Exs. A and B to Am. Compl.) Despite this admission, Ridgeway filed a ten-count counterclaim against Stryker alleging a host of statutory and tort claims, all of which are baseless and which are premised upon Stryker attaching the agreement to its Complaint in this lawsuit.

2.  From November 2001 to September 2013, Ridgeway was employed by Stryker's subsidiary, Howmedica. He began his employment as a Sales Representative and eventually became a District Sales Manager in Southern Louisiana (including New Orleans) for Stryker's

17811536v.1

Craniomaxillofacial ("CMF") division, which sells microfixation implants that fix cranial fractures and deformities ("skull implants"). He also sold products from Neuro Spine ENT ("NSE"), which provide products for use in the Neuro, Spine, and ENT marketplace. (Ans. ¶¶ 3, 34.)

3. Prior to his employment, Ridgeway signed a standard CMF non-compete agreement (the "Agreement"). (*See* Ex. A & B to Am. Compl.; Ans. ¶¶ 57-58; Countercl. ¶ 24.) On October 24, 2001, Stryker faxed him an offer letter, its standard Agreement, and its Code of Conduct. (*See* Ex. A to Am. Compl.; Ans. ¶¶ 58-59.)

4. The offer letter stated that: "Failure to sign this agreement as well as the enclosed Nondisclosure and Noncompetition Agreement within the allotted time will terminate the offer." *Id*. On October 25, 2001, Ridgeway sent a four-page fax to Stryker containing the signed offer and two signature pages, one for the Agreement and one for the Code of Conduct. *Id.*

5. He did not fax back the complete Agreement or Code of Conduct; however, the accompanying fax cover letter from Ridgeway explained, "Here are signed copies of my offer letter, non-compete agreement, and code of conduct." *Id*. Ridgeway admits that the entire October 25, 2001 fax is a genuine document. (Ans. ¶¶ 57-58.)

6. During his employment, Ridgeway, on behalf of Stone Surgical, a company he formed during the course of his employment, entered into "serious" discussions with Biomet, a Stryker competitor, to distribute skull and spinal implants on behalf of Biomet in his Stryker territory. (Countercl. ¶¶ 3-8.) Upon learning of Ridgeway's discussions with Biomet and his efforts to recruit other Stryker personnel, Stryker terminated his employment. (Countercl. ¶ 7.)

7. On September 23, 2013, Stone Surgical and Biomet entered into a distributorship agreement pursuant to which Stone Surgical would sell and distribute Biomet skull implants

throughout Louisiana. (Ans. ¶ 118 & Ex. F to Stryker's Am. Compl.; Countercl. ¶ 8.) At that time, Stone Surgical and Biomet were also "on the verge" of signing another agreement concerning spinal implants. (Countercl. ¶¶ 8-15.)

8. On September 30, 2013, Stryker filed suit against both Ridgeway and Biomet, seeking, among other things, injunctive relief to enforce the Agreement. (*See* Dkt. No. 1; Countercl. ¶¶ 17-19.) As required by the Federal Rules of Civil Procedure, Stryker attached the Agreement and Ridgeway's signature page to the Complaint as Exhibit A. Stryker then served that Complaint on all named defendants, including Ridgeway and Biomet.

9. On or about October 7, 2013, Biomet terminated its distributorship agreement with Stone Surgical. (*See* Ans. ¶ 118 & Ex. F to Am. Compl.)

10. On November 8, 2013, Ridgeway filed motions to dismiss Stryker's Complaint for lack of jurisdiction and to transfer the litigation to Louisiana. (Dkt. Nos. 37-38.) Ridgeway argued that this Court did not have personal jurisdiction over him because the Agreement was not a genuine document and, therefore, he was not bound by the venue provision contained in it.

11. Denying Ridgeway's motion, the Court held, on July 21, 2014, that "Stryker has made a *prima facie* showing that Ridgeway signed a copy of the same Non-Compete Agreement that is attached as Exhibit B to Stryker's Amended Complaint" and that Stryker made a *prima facie* showing that the Agreement was valid and enforceable. (*Id.* at 8-14).

12. Despite this ruling, on August 5, 2014, Ridgeway filed a ten-count counterclaim (the "Counterclaim") against Stryker, in which he relies on the same faulty premise that this Court previously rejected, *i.e.*, that the Agreement is not a genuine document.

13. The Counterclaim asserts claims against Stryker for violations of the Louisiana Unfair Trade Practices Act (LUTPA) (Count I); fraud under Louisiana law (Count II); tortious

17811536v.1

interference under Louisiana law (Count III); tortious interference under Michigan law (Count IV); slander/defamation under Michigan law (Count V); fraud under Michigan law (Count VI); detrimental reliance under Louisiana and Michigan law (Count VII); abuse of process (Count VIII); attorneys' fees under LUTPA and La. Civ. C. art. 1958 (Count IX); and civil conspiracy (Count X).[1]

14. All of these claims should be dismissed.

15. Ridgeway's claim for violation of the Louisiana Unfair Trade Practices Act ("LUTPA") (Count I) fails because this statute has no extraterritorial effect and therefore cannot be used to regulate conduct which occurred exclusively in Michigan. *See, e.g., In re Refrigerant Compressors Antitrust Litig.*, No. 09-2042, 2013 U.S. Dist. LEXIS 50737, at *62-63 (E.D. Mich. Apr. 9, 2013).

16. Even assuming LUTPA could apply in this case, Ridgeway's claim still fails because the conduct at issue is not prohibited by that statute. LUTPA prohibits persons from utilizing "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51: 1405. Ridgeway has not pled (1) an unfair method of competition or deceptive act or practice; or (2) that such an act occurred in the conduct of trade or commerce. All Stryker is alleged to have done is paired Ridgeway's signature page, which he admits is genuine, with the Agreement and attached that to its Complaint.

17. This is not a deceptive act, as this Court has already found that Stryker made a *prima facie* showing that Ridgeway signed the standard Agreement attached to the Complaint

---

[1] Stone Surgical filed a complaint against Stryker in the Eastern District of Louisiana ("Louisiana Litigation") asserting essentially identical claims to Ridgeway's Counterclaim. (*See Stone Surgical, LLC v. Stryker, et* al., No. 13-6315 (filed E.D. La. Nov. 1, 2013).) Each of these claims stems from the same assertion that Ridgeway has made here, i.e., that he is not bound by the Agreement. (*See id.*, Dkt. No. 9.) On August 19, 2014, the Judge in the Louisiana Litigation entered an order finding that it was substantially related to the Michigan Litigation, dismissing the case, and transferring that case to this Court. (*See id.,* Dkt. No. 35.)

and that that Agreement is valid and enforceable. (*See* July 21, 2014 Slip Op. at 6, 8-14, Dkt. No. 69). Moreover, this act occurred in the course of litigation, not in the course of trade or commerce. To the extent Ridgeway also asserts a claim for attorneys' fees based on this LUTPA (*see* Count IX), it should be dismissed for the reasons stated above.

18. Ridgeway's claim for fraud under Louisiana law (Count II) fails because the only representation he identifies that was allegedly false is one made ***to Biomet***. But Ridgeway cannot maintain a claim for fraud based on misrepresentations made to someone other than himself. To the extent Ridgeway also asserts a claim for attorneys' fees based on this alleged fraud (*see* Count IX), it should be dismissed for this reason and because he is not seeking rescission of a contract, as required by LA. CIV. CODE ART. 1958.

19. Ridgeway's claim for tortious interference under Louisiana law (Count III) fails because it is premised on Stryker's alleged interference with a contract between Biomet and Stone Surgical, a third-party. Moreover, Louisiana only recognizes claims for tortious interference where a corporate officer has allegedly interfered with a contract between his employer and a third-party. *See 9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989).

20. Ridgeway's claim for tortious interference under Michigan law (Count IV) fails because filing and prosecuting a lawsuit cannot form the basis of a commercial tort claim. *See Johns-Manville Corp. v. Guardian Indus. Corp.*, No. 81-70248, 1981 U.S. Dist. LEXIS 14657, at *4-6 (E.D. Mich. Apr. 24, 1981). Further, even if a tortious interference claim were available to Ridgeway, he fails to plead the requisite elements.

21. Ridgeway's claim for slander and defamation under Michigan law (Count V) fails because it lacks the specificity required of such a claim. Ridgeway does not specify the purported statements or which corporate entity caused the allegedly defamatory statements to be

made, let alone identify which representative of which corporation made the statements. Further, the only harm alleged by Ridgeway is that arising from Biomet's termination of an agreement it had with Stone Surgical; however, none of the alleged defamatory statements were made to Biomet. Accordingly, no causal connection exists between the statements and the alleged injury.

22. Ridgeway's Michigan fraud claim lacks specificity, failing to: "(1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012).

23. Even if Ridgeway's allegations were pled with the requisite specificity, he fails to plead allegations sufficient to establish the third, fourth, fifth and sixth elements of a fraud claim.

24. Ridgeway's claim for detrimental reliance (Count VII) fails because detrimental reliance is not a separate and independent cause of action under Michigan law.

25. Ridgeway's claim for abuse of process under (Count VIII) fails because no allegation exists that Stryker has sought or is currently seeking to put pressure on him or extort him in any way. His sole allegation that Stryker filed this litigation with the ulterior motive of "causing vexation, trouble, embarrassment" and damaging his professional reputation does not constitute an "ulterior motive" under Michigan law. *Early Detection Center, PC v. New York Life Ins.*, 403 N.W.2d 830, 835 (Mich. Ct. App. 1986).

26. Ridgeway's claim for conspiracy (Count X) fails because there is no combination of two or more persons, which is a required element of such a claim. Here, Ridgeway alleges a conspiracy only between Stryker and Howmedica, its subsidiary. (See Ans. ¶¶ 17-18.) Under the intra-corporate conspiracy doctrine, a corporation cannot conspire with its subsidiaries. *See, e.g., Upton v. City of Royal Oak,* 492 Fed. App'x 492, 505-06 (6th Cir. 2012).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Stryker respectfully requests that this Court grant Plaintiffs' Motion to Dismiss Ridgeway's Counterclaims in its entirety.

**Dated: August 29, 2014**                   Respectfully submitted,

                                             **STRYKER CORPORATION and
                                             HOWMEDICA OSTEONICS CORP.**


                                             By /s/ Justin K. Beyer

                                                    One of Their Attorneys

Craig H. Lubben
David J. Gass
MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C.
100 West Michigan Avenue, Suite 200
Kalamazoo, Michigan 49007
Telephone: (269) 226-2958
Facsimile:  (269) 978-2958

Michael D. Wexler
Jason P. Stiehl
Justin K. Beyer
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys for Plaintiffs Stryker Corporation
and Howmedica Osteonics Corp.*

17811536v.1

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that a true and correct copy was served upon all counsel of record per the ECF Filing System on this 29th day of August  2014.


                /s/ Justin K. Beyer

17811536v.1