UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

S TRYKER C ORPORATION, et al.,

    Plaintiffs,

v.

C HRISTOPHER R IDGEWAY, et al.,

    Defendants.
_____/

Hon. Robert Holmes Bell

Case No. 1:13-cv-1066-RHB

S TONE S URGICAL LLC,

    Plaintiff,

v.

S TRYKER C ORPORATION, et al.,

    Defendants.
_____/

Hon. Robert Holmes Bell

Case No. 1:14-cv-0889-RHB

## **OPINION**

This matter is before the Court on plaintiff Stryker Corporation's (Stryker) petition for fees and costs (Dkt. 222), pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), relating to its largely successful motion to compel discovery (Dkt. 174).[1] Stryker seeks $29,825.80 in fees and $2,589.81 in travel costs. (Dkt. 46-1, Page ID

---

[1] Unless otherwise noted, docket entries in this Opinion refer to those in Case No. 13-cv-1066.

378). Defendant Christopher Ridgeway (Ridgeway) objects to the amount of fees and expenses being sought in the petition (Dkt. 240). Having considered the parties' written submissions, as well as the oral arguments during the April 10, 2015, and June 1, 2015, hearings, Stryker's petition will be granted in part and denied in part.

## **Procedural and Factual Background**

Stryker filed this action against defendants Ridgeway, Biomet, Inc., and Richard Steitzer, alleging breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with contract (Case No. 13-cv-1066, Amended Complaint, Dkt. 23). Stone Surgical, LLC (Stone Surgical), wholly owned by Ridgeway, filed suit against Stryker and its wholly owned subsidiary, Howmedica Osteonics Corporation, in the Eastern District of Louisiana, which case was later transferred to this district (Case No. 14-cv-889, Complaint, Dkt. 1). Stone Surgical raises a number of claims, including unfair trade practices, fraud, unjust enrichment, intentional interference with contractual and business relations, abuse of process, negligence, and unfair competition (Case No. 14-cv-889, First Amended Complaint, Dkt. 44). The two cases have been consolidated (Case No. 13-cv-1066, Order, Dkt. 94).

To describe the discovery process in these consolidated cases as litigious would be an understatement. There have been no less than 23 contested discovery-related motions filed to date.[2]

---

[2] *See* Docket Nos. 84, 106, 124, 135, 150, 153, 174, 185, 186, 192, 215, 225, 228, 232, 238, 242, 244, 258, 260, 267, 283, 288, and 292.

Underlying the instant fee petition is Stryker's February 25, 2015, Motion to Compel Ridgeway's Answers to Discovery Requests (Dkt. 174). Specifically at issue in that motion were Ridgeway's answers to Stryker's interrogatories 3 and 6, and Ridgeway's responses to Stryker's document requests 8, 9, 12 and 14 (Dkt. 174, Page ID 3577-81). Stryker also sought orders requiring Ridgeway to provide access to responsive electronically stored information (ESI) in the form of emails and text messages, to produce a privilege log for all documents withheld on the basis of privilege, and to reproduce certain Stryker proprietary documents with a confidentiality designation (Dkt. 174, Page ID 3581-84).

On March 17, 2015, the Court conducted a two-hour hearing on the motion to compel (Dkt. 193). The following day, the Court issued an order granting the motion in part and holding it in abeyance in part (Dkt. 195). The Court granted the motion with respect to interrogatories 3 and 6, as well as document requests 8, 9, 12 and 14, also requiring Ridgeway to certify the answers and responses as accurate and complete (Dkt. 195, Page ID 3952). The Court ordered Ridgeway to produce a privilege log (Dkt. 195, Page ID 3953). With respect to the Stryker proprietary documents, the Court ordered Stryker to provide the confidentiality designation and Ridgeway to "mark, reproduce, and serve on Stryker Corporation the documents so designated" (*id.*). The Court held in abeyance the issue regarding the production of the ESI pending a hearing at which Ridgeway's computer consulting expert was to provide information concerning the "native format" of the emails and text messages at issue (*id.*). That hearing was scheduled for April 1, 2015 (Dkt. 197).

In a rare instance of cooperation, the parties reached agreement regarding the production of the ESI (Stipulation and Agreed Order, Dkt. 210-1). The Court adopted the stipulation and cancelled the April 1, 2015, evidentiary hearing (Dkt. 212).

On April 10, 2015, the Court heard oral arguments on Stryker's request, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), to recover fees and expenses relating to its February 25, 2015, motion to compel discovery (Minutes, Dkt. 213). After considering the parties' submissions, and for the reasons stated on the record, the Court granted Stryker's request for "reasonable expenses" on April 13, 2015 (Dkt. 214). The Court directed Stryker to file its petition for fees and costs, noting that, "[t]o the extent practical, the petition should exclude expenses and fees relating to issue identified in the motion as 'Failure To Produce Stryker Documents With Confidentiality Designations' (Dkt. 174, Page ID 3583-84)" (Dkt. 214, Page ID 4228).

Stryker filed its fee petition on April 27, 2015 (Dkt. 222). Ridgeway timely filed his response in opposition to the petition on May 8, 2015 (Dkt. 240). On June 1, 2015, the Court heard oral arguments regarding the fee petition (Minutes, Dkt. 271).

## Discussion

The basis for awarding reasonable attorney's fees and expenses is found in Federal Rule of Civil Procedure 37(a)(5)(A), which provides, in pertinent part: "If the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

(Emphasis supplied). There are only three exceptions to this mandate, *see* FED. R. CIV. P. 37(a)(5)(A)(i-iii), none of which apply here.

The award of costs is the norm, rather than the exception. *Eastern Maico Distribs., Inc. v. Maico-Fahrzeugfabrik*, 658 F.2d 944, 948 n.4 (3d Cir. 1981); *see Boles v. Lewis*, No. 1:07-cv-277, 2009 WL 2021743, at * 3 (W.D. Mich. July 7, 2009). Costs include those necessary to comply with the meet and confer requirement, those necessary to bringing the motion to compel, and those associated with the fee petition. *See McCarthy v. Ameritech Publishing, Inc.*, 289 F.R.D. 258, 262 (S.D. Ohio 2013), *rev'd on other grounds*, 763 F.3d 488 (6th Cir. 2014) ("[P]rovisions of Rule 37 authorize a court to award payment of reasonable expenses 'caused by the [discovery] failure'.").

Having already found a sufficient basis for awarding costs, the only remaining issue is the reasonableness of the fees and expenses sought. The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[3]

---

[3]The Sixth Circuit "rel[ies] on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute." *Isabel*, 404 F.3d at 415.

**The Reasonable Hourly Rate**

The Court begins this analysis by determining a reasonable hourly rate. "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). There is a presumption in favor of the community market rates. *See, e.g., Blum*, 465 U.S. at 895 ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" (quoting *Blum*, 465 U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The so-called "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]'" *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Stryker's counsel, based in Chicago, asks the Court to disregard the local Grand Rapids, Michigan, market rates, and award the rates they charge Stryker for non-

compete and trade secret cases they are handling around the nation (Dkt. 222, Page ID 4365-66). Stryker argues that an exception to the community market rule is appropriate in this case because of the specialized nature of the pending litigation, which involves "novel and difficult" matters (Dkt. 222, Page ID 4366-67). Stryker asserts, in other words, that it is entitled to "out-of-town" rates because the nature and character of this case is such that it requires specialized expertise not readily available in the Grand Rapids legal community.[4]

The Sixth Circuit has recognized the potential for exceptions to the community market rule. *See Smith v. Service Master Corp.*, 592 Fed. Appx. 363, 369 (6th Cir. 2014) (citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir.1983)). Such exceptions must be well documented and explained, however. *Cf. Smith*, 592 Fed. Appx. at 370 ("The district court did not adequately explain its reasons for departing from the local rate for associates and did not discuss the governing criteria. Thus, we remand for further consideration."). Moreover, "judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535 (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982)).

---

[4] In its argument for out-of-town specialist rates, Stryker relies in part on *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.*, 262 F. Supp.2d 804 (W.D. Mich. 2003) (see Dkt. 222, Page ID 4365-67). That reliance is misplaced, as the *Crosby* decision was vacated by the Sixth Circuit. *See* 2004 WL 5389834, *1 (6th Cir. Dec. 29, 2004).

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of an hourly rate, as well as the number of hours worked:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415. None of these factors support an exception to the community market rule in this matter, and several militate against it.

Ridgeway's failure to produce discovery caused Stryker's counsel to expend time in making the motion to compel, but the questions presented in that motion were neither novel nor particularly difficult. Even assuming Stryker is correct in its characterization of the nature and complexity of the case overall, the Court must consider the novelty and difficulty of the questions presented *in the motion to compel*, and the skills needed to perform *that* legal service properly. *See Isabel*, 404 F.3d at 415 (factors (2) and (3)).

There is nothing about the motion to compel that required specialized expertise that was unavailable in the Grand Rapids legal market. Stryker had already retained highly competent local counsel in this case (*see* Dkt. 1, Page ID 34), counsel who have previously represented Stryker in substantive motions in other significant cases that were pending before this court. *See, e.g., Stryker Corp., et al. v. Nat'l Union Fire Insur.*

*Co. of Pittsburgh, PA, et al.*, Case No. 05-cv-51, Minutes, Dkt. 543 (W.D. Mich. Oct. 17, 2014) (hearing on cross-motions for summary judgment); *United States ex rel. Robert Laucirica v. Stryker Corp., et al.*, Case No. 09-cv-63, Minutes, Dkt. 52 (W.D. Mich. Apr. 29, 2010) (hearing on motions to dismiss and to transfer case); *TIG Insur. Co. v. Stryker Corp., et al.*, Case No. 09-cv-156, Minutes, Dkt. 29 (W.D. Mich. Sept. 21, 2009) (omnibus hearing on motion for partial summary judgment and discovery motions). Stryker was, of course, free to choose which counsel to assign to the motion to compel in this case. The point is that it was a choice, not a need, to use Chicago counsel. There is no basis for invoking an exception to the community market rule.

Having determined that the community market rule applies here, the next step is determining the prevailing market rate in the Grand Rapids area. In order to determine the local market rate, courts should rely on a combination of its own expertise and judgment. *Garber v. Shiner Enterprises, Inc.*, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)). The court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence of reasonable rates. *See Garber*, 2007 WL 4557857 at *1 (citing *Educ. Career Dev., Inc.*, 2007 WL 1601747 at *3). Other relevant sources include the attorney's actual billing rate and fee awards from prior cases. *See Payton v. New Century Mortgage Corp.*, 2004 WL 524693, at *2 (N.D. Ill. Mar.11, 2004).

Stryker's fee petition does not include the billing rates it pays local counsel. Stryker has, however, attached to its petition a copy of the 2014 edition of the State Bar of Michigan's Economics of Law Practice in Michigan, which includes reported billing rates throughout Michigan (Dkt. 222-5). This is an acceptable source. *See Wells v. Corporate Accounts Receivable*, 683 F. Supp.2d 600, 603 (W.D. Mich. 2010) (citing *O'Connor v. Trans Union, LLC*, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008)); *see also O'Connor*, 2008 WL 4910670 at *6 ("District courts have relied on the State Bar of Michigan . . . Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice.") (citing *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 Fed. Appx. 498, 501-02 (6th Cir.2006)).

According to the survey, the "mean" hourly rate for civil litigation in Grand Rapids is approximately $300.00 (Dkt. 222-5, Page ID 4430). This is a reasonable rate to use for purposes of Stryker's fee petition, and it will be applied to each of the three attorneys who worked on matters relating to the motion to compel. The Court will use $125.00 as the hourly rate for the paralegal. *See Fair Housing Center of Southwest Mich. v. Hunt*, 2013 WL 5719152, *10 (W.D. Mich. Oct. 21, 2013) (adopting an unobjected to $125.00 hourly rate for a Grand Rapids paralegal, even though it was "somewhat on the high side").

**Hours Reasonably Expended**

The next inquiry addresses the number of hours claimed.  In order to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).

The Court has considered the declarations of attorneys Michael D. Wexler (Dkt. 222-1; 224, Page ID 4444-48), Justin K. Beyer (Dkt. 222-2), and Robyn E. Marsh (Dkt. 222-3), as well as paralegal Michele F. Trull (Dkt. 222-4).  The Court has also reviewed the billing records submitted in support of the fee petition.  (Dkt. 224, Page ID 4450-4520).  The time entries will be addressed by category.

The Court has excluded time that it deems redundant, unnecessary, or contains insufficient information to meet Stryker's burden.  For example, the Court is not including time in which the entries indicate that Stryker's counsel were engaged in "conference," "correspondence," "analysis," or "strategy" with each other, unless the need for such activity has been sufficiently demonstrated and the activity has been adequately explained.  *See Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (Entries for "time spent in teleconferences or meetings . . . the purposes of which are not provided" are inadequate.).  In addition, there are instances of multiple rounds of review and revision for correspondence without adequate explanation.  *See, e.g., EEOC v. Peoplemark, Inc.*, 2011 WL 1707281, *7-8 (W.D. Mich.

March 31, 2011 (removing duplicative charges).  The Court has also excluded any time that appears to relate to the confidentiality-designation issue.

1. <u>Activities Relating to Meet and Confer Requirement</u>:

The Court has determined that the following times were reasonably expended in efforts to satisfy the meet and confer requirement, or to otherwise obtain the discovery without judicial intervention:

> 11/24/14 – Marsh – 1.0 hour (Page ID 4459)
> 11/25/14 – Marsh – 1.6 hours (Page ID 4460)
> 11/25/14 – Beyer – 1.3 hours (Page ID 4460)
> 12/1/14 – Marsh – 0.4 hour (Page ID 4466)
> 12/1/14 – Beyer – 1.5 hours (Page ID 4467)
> 12/2/14 – Wexler – 1.0 hour (Page ID 4467)
> 12/5/14 – Beyer – 0.4 hour (Page ID 4468)
> 12/10/14 – Beyer – 0.8 hour (Page ID 4471)[5]

The total compensable attorney time relating to the meet and confer requirement is <u>8.0 hours</u>.

2. <u>Research and Drafting Motion to Compel</u>:

The Court has determined that the following times were reasonably expended in researching and drafting the motion to compel and related documents:

> 2/10/15 – Marsh – 0.4 hour (Page ID 4491)
> 2/11/15 – Marsh – 0.5 hour (Page ID 4492)
> 2/11/15 – Marsh – 4.6 hours (Page ID 4492)
> 2/12/15 – Marsh – 0.8 hour (Page ID 4492)
> 2/12/15 – Beyer – 0.4 hour (Page ID 4493)

---

[5]In his declaration, Mr. Beyer explained that one hour of the 3.4-hour conference call on December 10, 2014, addressed the outstanding discovery requests, 0.2 hour of which related to the confidential document designation issue (Dkt. 222-2, Page ID 4381), for which the Court is not awarding fees.  Accordingly, the Court is including only 0.8 hour of the meet and confer time in the fee award.

>
> 2/13/15 – Marsh – 0.5 hour (Page ID 4493)
> 2/13/15 – Beyer – 1.8 hours (Page ID 4493)
> 2/16/15 – Wexler – 1.0 hour (Page ID 4494)
> 2/16/15 – Marsh – 2.5 hours (Page ID 4494)
> 2/16/15 – Beyer – 3.6 hours (Page ID 4494)
> 2/18/15 – Wexler – 0.5 hour (Page ID 4495)
> 2/18/15 – Beyer – 0.1 hour (Page ID 4495)
> 2/24/15 – Marsh – 0.5 hour (Page ID 4499)
> 2/24/15 – Marsh – 0.4 hour (Page ID 4499)

The total compensable attorney time expended on research and drafting the motion to compel is 17.6 hours.

In addition, the Court will award the costs associated with the paralegal's time in researching and preparing the motion to compel for filing:

> 2/23/15 – Trull – 2.8 hours (Page ID 4498)
> 2/24/15 – Trull – 3.6 hours (Page ID 4499)

The total compensable paralegal time is 6.4 hours.

Stryker's records do not specify the amounts of time expended on each issue in the motion to compel (as that is not a customary attorney billing practice). Giving Ridgeway the benefit of the doubt, the Court is excluding twenty percent of the attorney and paralegal time in this category as a proportionate reduction to account for the non-award of fees relating to the confidentiality-designation issue. *See Hensley*, 461 U.S. at 435-36 (After the lodestar has been determined, the court may further modify the fee award to take into account a number of circumstances, especially an adjustment for achieving only partial success.). This results in a total of fourteen hours of compensable attorney time and five hours of compensable paralegal time (with rounding) in this category.

3.  <u>Motion Hearings</u>:

The Court has determined that the following times were reasonably expended in preparing for and attending the two motion hearings (March 17 and April 10):

> 3/17/15 – Beyer – 6.2 hours (Dkt. 222-2, ¶ 11, Page ID 4382)
> 3/17/15 – Beyer – 1.5 hours (Dkt. 222-2, ¶ 12, Page ID 4382)[6]
> 4/10/15 – Beyer – 2.0 hours (Dkt. 222-2, ¶ 13, Page ID 4382)

The total compensable attorney time expended on the two hearings is <u>9.7 hours</u>.

Stryker also seeks to recover $2,589.81 in travel costs associated with the two hearings (Dkt. 222, Page ID 4370). The only support for these costs is Mr. Wexler's conclusory statement in his declaration (Dkt. 222-1, Page ID 4377). The Court does not question his word, and it recognizes that the billing receipts relating to these costs may not have been available at the time the fee petition was filed. Stryker was obligated, however, to provide a breakdown of the costs to allow the Court to assess the reasonableness of each expenditure. *See Harvey v. Mohammed*, 951 F. Supp.2d 47, 70 (D.D.C. 2013) ("[T]he court will not compensate unexplained fees . . . ."). The Court will not engage in speculation about this issue; nor will it conduct its own investigation of reasonable air fares and hotel rates. Stryker has failed to sustain its burden of justifying the travel expenses.

Moreover, as noted above, Stryker has failed to demonstrate a need to use its Chicago counsel for a discovery motion. Accordingly, it is not entitled to travel expenses. *See Harvey*, 951 F. Supp.2d at 71 ("[A]s with travel, lodging costs for out-of

---

[6] The hearing lasted two hours, approximately thirty minutes of which addressed the confidentiality-designation issue.

-town counsel are not reimbursable absent a showing that local counsel could not have done the work.").

4. The Fee Petition:

Mr. Beyer reports having expended thirteen hours preparing the fee petition, including four hours of research, one hour reviewing the billing records, six hours drafting and reviewing the fee petition, and two hours preparing the declarations (Dkt. 222-2, ¶ 15, Page ID 4383). Having reviewed the fee petition and the accompanying records, the Court finds these expenditures of time to be reasonable. Mr. Wexler's two hours of work on the petition (Dkt. 222-1, ¶ 18, Page ID 4377) will also be compensated.

The total amount of compensable attorney time for both the motion to compel and the fee petition is 46.7 hours, and the total amount of compensable paralegal time is 5.0 hours. This results in a total fee award of 14,635.00 (46.7 times $300.00 and 5.0 times $125.00).

## Conclusion

For the reasons set forth herein, Stryker's petition for attorney's fees and expenses (Dkt. 222) will be granted in part and denied in part. Its motion will be granted to the extent that it will be awarded $14,635.00 in fees under Federal Rule of Civil Procedure 37(a)(5)(A). The remainder of its motion will be denied.

Date: June 30, 2015                            /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge