UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, a Michigan
corporation; HOWMEDICA OSTEONICS
CORP., a New Jersey corporation,

        Plaintiffs,

                                 Case No.  1:13-CV-1066

v.

                                 HON. ROBERT HOLMES BELL

CHRISTOPHER RIDGEWAY, an individual;
RICHARD STEITZER, an individual; BIOMET,
INC., an Indiana corporation,

        Defendants.

and

STONE SURGICAL, LLC,

        Plaintiff,

v.                                Case No. 1:14-CV-889

STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.,

        Defendants.

_____/

# **O P I N I O N**

These consolidated cases are before the Court on Stryker's motion to dismiss

Christopher Ridgeway's counterclaim in 1:13-CV-1066 (ECF No. 82) and on Stryker's

motion to dismiss Stone Surgical LLC's Amended Complaint in 1:14-CV-889 (ECF No. 46).

For the reasons that follow, Stryker's motions will be granted in part and denied in part.

## I. Background Facts

Ridgeway was a sales representative and later a district sales manager for Stryker's subsidiary Howmedica in Louisiana from 2001 until his termination on September 10, 2013. (Ridgeway Countercl. ¶¶ 4, 6, 7, 21, ECF No. 76.)

Ridgeway alleges supervisors and managers in Stryker's Human Resources Department admitted to him on numerous occasions that they did not have a legal, binding, or enforceable non-compete agreement with him.  (*Id.* at ¶¶ 25-26.)  Ridgeway alleges that on several occasions Stryker asked him to sign a non-compete agreement, but he always declined.  (*Id.* at ¶ 27.)  He alleges that in 2012, he refused Stryker's offer of $15,000 in stock options because it was conditioned on his signing a non-compete agreement.  (*Id.* at ¶¶ 28-29.)

Biomet Microfixation, LLC is Stryker's competitor in the field of spinal and skull implants.  (*Id.* at ¶ 5.)  While Ridgeway was employed by Stryker, Biomet approached Ridgeway to enter into a distributorship agreement for the sale and distribution of spinal and skull implants.  (*Id.* at ¶ 3.)  Upon learning that Ridgeway had entered into serious discussions with Biomet, Stryker terminated Ridgeway's employment.  (*Id.* at ¶ 7.) Thereafter, Ridgeway, through his limited liability company, Stone Surgical LLC, negotiated distributorship agreements with Biomet to sell and distribute Biomet spinal and skull implants in Louisiana. (*Id.* at ¶ 8.)

2

Stryker filed this action against Ridgeway and Biomet, alleging breach of contract (a non-compete agreement), breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with contract. Stryker attached an employee non-compete agreement to the complaint which it alleged was a "true and correct copy of Ridgeway's Agreement." (*Id.* at ¶ 33; *see also* Compl. ¶ 57 & Ex. A, ECF No. 1.) After receiving the complaint with the alleged non-compete agreement, Biomet terminated its distributorship agreement with Stone Surgical because it believed that the non-compete agreement was genuine. (Ridgeway Countercl. ¶¶ 48, 49.)

Stryker subsequently acknowledged that it does not have Ridgeway's original non-compete agreement. On October 21, 2013, Stryker filed an amended complaint in which it alleged that it sent Ridgeway a form Employee Non-Compete Agreement in 2001; that Ridgeway executed the form agreement; and that Ridgeway faxed back to Stryker only the execution page of the form agreement. (SS Am. Compl. ¶ 57 & Exs. A, B, ECF No. 23.)

Ridgeway filed a counterclaim against Stryker, alleging the following claims:

1. Louisiana Unfair Trade Practices Act
2. Fraud (Louisiana law)
3. Tortious Interference with Contract (Louisiana law)
4. Tortious Interference with a Business Relationship and/or Contract (Michigan law)
5. Slander and Defamation (Michigan law)
6. Fraud/Innocent Misrepresentation (Michigan law)
7. Detrimental Reliance/Unjust Enrichment (Louisiana and Michigan law)
8. Abuse of Process
9. Attorney's Fees under LUTPA (Louisiana law)
10. Civil Conspiracy

(No. 1:13-CV-1066, ECF No. 76.)

Stone Surgical filed an eight-count complaint against Stryker in the United States District Court for the Eastern District of Louisiana to recover commissions it would have made in the future as a distributor for Biomet. Stone Surgical's amended complaint alleges the following claims:

1. Louisiana Unfair Trade Practices Act
2. Fraud (Louisiana law)
3. Unjust Enrichment (Louisiana law)
4. Tortious Interference with Contract (Louisiana law)
5. Tortious Interference with Business Relationship (Michigan law)
6. Abuse of Process
7. Negligence
8. Unfair Competition (Michigan law)

(No. 1:14-CV-889, SS Am. Compl., ECF No. 44.)

Ridgeway's counterclaim and Stone Surgical's amended complaint are both premised on the contention that Stryker fabricated a non-compete agreement between Ridgeway and Stryker and then used that non-compete agreement to interfere with the contract between Stone Surgical and Biomet. Stone Surgical's complaint was transferred to this Court and the two cases have been consolidated.

Stryker has moved to dismiss Ridgeway's counterclaim and Stone Surgical's amended complaint in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.

## II. 12(b)(6) Standards

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion,

this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Heinrich v. Waiting Angels Adoption Servs., Inc*., 668 F.3d 393, 403 (6th Cir. 2012). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 ( 2012) (quoting *Iqbal*, 556 U.S. at 677). Dismissal may be granted only if the moving party is "clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011).

### III.  Global Challenges

A.  Claims Under Louisiana Law

Ridgeway and Stone Surgical have alleged claims under both Michigan and Louisiana law. Stryker contends as a preliminary matter that all of the claims asserted under Louisiana law are subject to dismissal because Michigan law governs the tort claims alleged in Ridgeway's counterclaim and Stone Surgical's complaint. Ridgeway and Stone Surgical disagree.

A federal court sitting in diversity applies the substantive law of the state in which it sits, including the state's choice-of-law rules. *Equitable Life Assur. Soc. of United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) (observing that forum state's choice-of-law rules are substantive). However, when a case is transferred from one federal court to another pursuant to 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules that the transferor court would have applied. *Ferens v. John Deere Co.*, 494 U.S. 516, 522-23 (1990); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 632-37 (1964)). This rule, however, is subject to the caveat that, if the transfer was made not for the convenience of the parties and witnesses but pursuant to the first-to-file rule, then no deference to the transferor court is required. *Id.*

The Stone Surgical complaint was transferred to this Court under the first-to-file rule. (Aug. 19, 2014 Op. at 7, Case No. 1:14-CV-889, ECF No. 35.) Accordingly, this Court is not required to defer to Louisiana's choice-of-law rules. The Court will ultimately determine the governing law for both Ridgeway's counterclaim and Stone Surgical's complaint under the Michigan choice-of-law rules.

"In a tort action, Michigan courts recognize a presumption in favor of lex fori and apply Michigan law 'unless a "rational reason" to do otherwise exists.'" *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (quoting *Sutherland v. Kennington*

*Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997)). In determining whether to displace

Michigan law, Michigan courts undertake a two-step analysis:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.* (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 304-05 (Mich. 1987)). Michigan courts

consider the place where the injury occurred as the place of the wrong, and they treat the

place of the injury as a significant factor in determining what law to apply. *Standard Fire*,

723 F.3d at 698. If there is no conflict between the laws of the states, the presumption that

the law of the forum state controls is not overcome. *Rosen v. Chrysler Corp.*, 205 F.3d 918,

921 n. 2 (6th Cir. 2000).

The non-compete agreement at issue in this case contains a Michigan choice of law

provision:

> This Agreement shall be construed in accordance with and governed for all purposes by the law of the State of Michigan.

(Non-Compete Agrmt., SS Am. Compl. Ex. B, ¶ 13.) However, the fact that this Court

previously denied Ridgeway's motion to dismiss for lack of personal jurisdiction based on

Stryker's prima facie showing that Ridgeway signed the form non-compete agreement and

agreed to this Court's jurisdiction (ECF No. 69), does not resolve the choice-of-law inquiry.

First, the Court has not made a ruling on whether Ridgeway is bound by the non-compete

agreement for purposes of Stryker's substantive claims because the Court has not yet had an

7

opportunity to consider Ridgeway's evidence regarding the creation of the agreement. Second, even if the non-compete agreement applies, it is unclear to what extent it would apply to Ridgeway's tort claims as opposed to Stryker's contract claims.

Louisiana clearly has an interest in the tort claims filed by Ridgeway and Stone because Ridgeway and Stone reside in Louisiana and Stryker's actions have affected their ability to continue to work in Louisiana. The Court cannot determine on this motion whether Louisiana's interest overrides the interest of Michigan. This is a question that will eventually be applied on a claim-by-claim basis after the facts have been developed. At the present time, the Court denies Stryker's motion to dismiss Ridgeway and Stone Surgical's claims under Louisiana law.

B. Noerr-Pennington Doctrine

Stryker moves for dismissal of all of Ridgeway's and Stone Surgical's claims under the *Noerr-Pennington* doctrine. Stryker contends that Ridgeway and Stone Surgical's claims are barred because actions taken by Stryker in the course of litigation cannot form the basis for the tort claims alleged.

The essence of the *Noerr-Pennington* doctrine is that "parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988)).

"Although the *Noerr-Pennington* doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference." *Id.* "The doctrine is, at bottom, founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right." *Id.* There is an exception to the *Noerr-Pennington* doctrine for sham litigation. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 408 (6th Cir. 2012). To fall within this exception, the action must be "objectively meritless. *Id.*

Ridgeway and Stone Surgical contend that they have suffered damages as a result of Stryker's fabrication of the "sham" non-compete agreement in an effort to destroy Ridgeway and Stone Surgical's business relationship with Biomet, rather than from Stryker's filing of the lawsuit against Ridgeway and Biomet. In the alternative, they contend that Stryker's claims based on the non-compete agreement are objectively meritless because the non-compete agreement was a sham.

Ridgeway and Stone Surgical have pleaded that Stryker fabricated the non-compete doctrine in order to interfere with their ability to compete in the marketplace. Their allegations are sufficient to support an inference that they likely would have suffered damages as a result of Stryker's creation of the non-compete agreement even in the absence of this lawsuit. Their allegations are also sufficient to support an inference that, to the extent Stryker's claims rely on the non-compete agreement, Stryker's claims are a sham. Moreover,

Ridgeway has based some of his claims on tortious conduct that preceded the lawsuit, including allegations that Stryker repeatedly assured him that he did not have a non-compete agreement and destroyed the paperwork comprising the terms of his employment agreement. Ridgeway has also alleged a defamation or slander claim that is not based on the filing of the suit or on any allegations in Stryker's complaint.  In sum, the Court is satisfied that Ridgeway and Stone Surgical's claims are not necessarily barred by the *Noerr-Pennington* doctrine. Accordingly, Stryker's motion to dismiss all of their claims under the *Noerr-Pennington* doctrine will be denied.

### IV.  Challenges to Individual Claims

A.  <u>Louisiana Unfair Trade Practices Act</u>

Ridgeway and Stone Surgical have alleged claims under the Louisiana Unfair Trade Practices Act.  (Countercl. Count I; SS Am. Compl. Count I.)

The Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1405 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  "Unfair practices" are those which offend "established" public policy and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Able Sec. & Patrol, LLC. v. Louisiana*, 569 F. Supp. 2d 617, 633 (E.D. La. 2008) (quoting *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 522 So.2d 1362, 1365 (La. Ct. App. 1988)).  "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation."  *Id.* (quoting *United Grp. of Nat. Paper*

*Distribs., Inc. v. Vinson*, 666 So.2d 1338, 1346 (La. Ct. App. 1996).

Ridgeway and Stone Surgical allege that Stryker violated LUTPA by fabricating a non-compete agreement between Stryker and Ridgeway, and then suing Ridgeway and Biomet for violation of that non-compete agreement, even though Stryker was aware that it had no valid non-compete agreement with Ridgeway.

Stryker moves for dismissal of the LUTPA claim based on its assertion that LUTPA has no extraterritorial effect. Stryker contends that the only conduct at issue is Stryker's filing of this action in Michigan and its service of the complaint on Biomet in Indiana, and that LUTPA cannot be used to govern conduct that occurred solely outside of Louisiana. *See BMW Stores, Inc. v. Peugeot Motors of Am., Inc.*, 860 F.2d 212, 215 (6th Cir. 1988) (citing 73 Am. Jur. 2d *Statutes* § 359 in support of the presumption that state statutes are intended to have no extraterritorial effect).

Stryker's assertion that the only conduct at issue took place in Michigan and Indiana ignores Ridgeway and Stone Surgical's allegations that Biomet was dealing with Ridgeway and Stone Surgical in Louisiana, and that Louisiana is where the effects of Stryker's conduct were felt. In *In re Refrigerant Compressors Antitrust Litig*ation, No. 2:09-MD-02042, 2013 WL 1431756, at *18 (E.D. Mich. Apr. 9, 2013), cited by Stryker, the court dismissed a North Carolina unfair trade practices act claim because the plaintiffs failed to allege a substantial effect on any in-state business. In contrast to that case, Ridgeway and Stone Surgical have alleged substantial anti-competitive effects within the state of Louisiana. Accordingly, the

11

Court is not convinced that allowing the LUTPA claim would violate the commerce clause based on an impermissible extraterritorial effect.

In the alternative, Stryker contends that Ridgeway and Stone Surgical's LUTPA claim fails because they have not properly stated a claim under the act. Stryker contends that Ridgeway and Stone Surgical have not sufficiently pled a deceptive act because they have not alleged that the terms of the agreement Ridgeway did sign differed from the form Agreement Stryker attached to its initial complaint. Stryker contends that they have also failed to state a claim under LUTPA because the allegedly deceptive conduct occurred solely in the course of litigation, rather than in the course of trade or commerce, as required by the act.

Ridgeway and Stone Surgical's complaints allege that Stryker knew it had no legal, binding or enforceable non-compete agreement with Ridgeway, and that it fabricated an agreement by attaching Ridgeway's signature page from an unknown agreement to a non-compete agreement of another person. Ridgeway and Stone Surgical's complaints further allege that Stryker created the "sham" non-compete agreement in order to disrupt their business relationship with Biomet and to prevent Ridgeway and Stone Surgical from competing with Stryker in Louisiana. "[W]here there exists evidence of fraud or specific intent to injure a competitor, the courts have been more willing to embrace the LUTPA." *Able Sec. & Patrol*, 569 F. Supp. 2d at 634. The Court is satisfied that these allegations adequately allege a deceptive act and also allege sufficient facts to suggest that the conduct

arose in the course of trade or commerce, rather than solely in the context of this litigation.

Stryker's motion to dismiss the LUTPA claims will accordingly be denied.

B.   Fraud (Louisiana law)

Ridgeway and Stone Surgical's fraud claim under Louisiana law is based on their allegation that Stryker misrepresented "to Biomet" that the non-compete agreement was a genuine and valid agreement, that Biomet relied on the misrepresentation, and that Ridgeway and Stone Surgical were injured as a result.  (Countercl. Count II, ¶ 59; SS Am. Compl. Count II, ¶ 41.)  Stryker contends that the fraud claim fails because there is no allegation of a false statement to either Ridgeway or Stone Surgical.  In response, Ridgeway and Stone Surgical contend that the Louisiana fraud statute does not require a misrepresentation to the injured party and reliance by the injured party.

The Louisiana Civil Code provides:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.

La. Civ. Code  art. 1953. Louisiana courts have stated that the elements of a claim of fraudulent misrepresentation under Louisiana law are:  "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury."  *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1145 n.33 (5th Cir. 1988), *vacated on other grounds sub nom*. *Fryar v. Abell*, 492 U.S. 914 (1989).

Ridgeway and Stone Surgical contend that the statutory definition is broad enough to

encompass their claim that Stryker made a misrepresentation to Biomet who, in reliance on that misrepresentation, terminated its business with Ridgeway and Stone Surgical.

Neither party has presented any case law suggesting that the statute either requires or does not require that the misrepresentation be made to and relied on by the injured party. Because the statutory language does not expressly limit and confine a claim for fraud to those circumstances where the misrepresentation is made to and relied on by the injured party, the Court will deny Stryker's motion to dismiss the fraud claim for lack of a misrepresentation to Ridgeway.[1]

Stryker contends that the Louisiana fraud claim also fails because Ridgeway has not satisfied his burden of pleading that Stryker made a representation with knowledge of its falsity. Specifically, Stryker faults Ridgeway and Stone Surgical for failing to allege that the agreement Ridgeway signed has different terms than the one attached to Stryker's initial complaint.

Stryker measures Ridgeway and Stone Surgical's allegations against Stryker's theory of the case and ignores the allegations that Stryker destroyed paperwork comprising the terms of any employment agreement with Ridgeway, that Stryker knew and admitted that it had no legal, binding, or enforceable non-compete agreement, and that Stryker then fabricated a non-compete agreement by attaching Ridgeway's signature page from an unknown agreement to

---

[1]The Court is uncertain, however, whether such a claim would differ in any material respect from the tortious interference claim.

a non-compete agreement of another employee.  The Court is satisfied that Ridgeway has sufficiently alleged that Stryker made a representation with knowledge of its falsity. Accordingly, Stryker's motion to dismiss the Louisiana fraud claim will be denied.

C.  Tortious Interference with Contract (Louisiana law)

Although Ridgeway and Stone Surgical have filed separate counts of tortious interference claims under Louisiana and Michigan law, they have pled these counts in the alternative.  (Countercl. Counts III & IV, ¶ 65; SS Am. Compl. Counts IV & V, ¶ 48.)

Stryker contends that the tortious interference claim under Louisiana law fails because Louisiana limits the claim to officers, not to corporations.  *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989).  Ridgeway claims *Spurney* is no longer the law based on *American Waste & Pollution Control Co. v. Browning-Ferris, Inc*., 949 F.2d 1384,(5th Cir. 1991)*.*

> Contrary to Ridgeway's claims, the Fifth Circuit stated just the opposite:
>
> the post-*Spurney* decisions have not expanded the Louisiana law of tortious interference with contracts. The Louisiana Supreme Court has recognized the doctrine only in the limited context of a corporate officer; and to date, both it and the lower state courts have refused to extend this doctrine to other situations.

*Id.* at 1390.  However, subsequent to *Spurney*, courts in Louisiana have relaxed the standard and have allowed tortious interference claims against corporations.  *See*, *e.g.*, *Gearheard v. De Puy Orthopaedics, Inc*., No. CIV.A.99-1091, 2000 WL 533352, at *7 (E.D. La. Mar. 17, 2000) ("In light of *Preis*, which was decided several months after *9 to 5 [v. Spurney]*, the Court finds that, under the circumstances of the instant case, DePuy's obligation not to

enforce the illegal non-competition agreement against plaintiffs can form the basis of a claim of intentional interference with contractual relations."). Because the more recent cases suggest that Louisiana is relaxing its strict rule about limiting tortious interference cases to corporate officers, the Court is satisfied that Louisiana does not have an overriding interest in disallowing a tortious interference claim under the facts of this case. The Court will accordingly dismiss the tortious interference claims under Louisiana law.

D. Tortious Interference with a Business Relationship and/or Contract (Michigan law)

Stryker contends that Ridgeway's tortious interference claim under Michigan law fails because he is not the real party in interest. It is undisputed that Biomet's contract with which Stryker allegedly interfered was with Stone Surgical, not with Ridgeway. (Countercl.¶¶ 67-70.) Ridgeway responds that he is the real party in interest because he was a third-party beneficiary of the distributorship agreement, was named in the agreement as the manager, and is not just a shareholder bringing a claim on behalf of the LLC.

The Federal Rules of Civil Procedure require an action to be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). "In Michigan, the law treats a corporation as entirely separate from its shareholders, even where one person owns all the corporate stock." *Environair, Inc. v. Steelcase, Inc.*, 475 N.W.2d 366, 367-68 (Mich. Ct. App. 1991), *overruled on other grounds by Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843 (Mich. Ct. App. 2005) (affirming dismissal of tortious interference claim brought by sole shareholder where contract at issue was between the corporation and

16

a third party).  "Generally, a suit to enforce corporate rights or to redress or prevent injury to the corporation, whether arising out of contract or tort, must be brought in the name of the corporation and not that of a stockholder, officer, or employee."  *Id.*

Ridgeway's claim that he is a third-party beneficiary of the contract does not make him the real party in interest.  "'One who has created a corporate arrangement, . . . does not have the choice of disregarding the corporate entity.'"  *Klukavy v. United Nat. Ins. Co.*, 654 F. Supp. 622, 625 (E.D. Mich. 1987) (quoting *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946)) (holding that although shareholders may be the real parties in interest, they had no cause of action as owners with respect to proceeds of an insurance policy purchased by the corporation).

An action may not be dismissed for failure to prosecute in the name of the real party in interest without a reasonable opportunity to join or substitute the real party in interest. Fed. R. Civ. P. 17(a)(3).  Because Stone Surgical's action, with an identical tortious interference claim, has been consolidated with Stryker's action against Ridgeway, Ridgeway's tortious interference claim is subject to dismissal.

Stryker contends that Stone Surgical's tortious interference claim is barred because the filing of a lawsuit cannot form the basis of a commercial tort claim. Stryker's argument, like its argument regarding the *Noerr-Pennington* doctrine, is premised on its assertion that Stone Surgical's claim is premised **solely** on filing litigation.  As the Court determined with respect to Stryker's *Noerr-Pennington* argument, reading the complaint in the light most

favorable to Stone Surgical, and drawing all inferences in Stone Surgical's favor, the pleadings can be read to assert damages stemming from something more than filing the lawsuit, and they can also be read to support a claim that Stryker's claims regarding the non-compete agreement are a sham.

Stryker also contends that Stone Surgical has not alleged that interference with Stone Surgical's contract with Biomet was Stryker's intended purpose. Stryker's assertion lacks merit. Stone Surgical specifically alleged that Stryker knew it had no valid non-compete with Ridgeway, yet intentionally sought to destroy the business relationship that Ridgeway had with Biomet through Stone Surgical. (SS Am. Compl. ¶ 27 ("Without any enforceable non-compete agreement, and desperate to stop Christopher Ridgeway from selling Biomet devices" Stryker engaged in a "deceptive act to torpedo the new business relationship.")).

Accordingly, the Court will grant Stryker's motion to dismiss Ridgeway's tortious interference claim under Michigan law, but will deny Stryker's motion to dismiss Stone Surgical's tortious interference claim under Michigan law.

E.  Slander and Defamation

Ridgeway's complaint alleges a slander and defamation claim under Michigan law (Countercl. ¶ 73), but he has defended the claim under Louisiana law because Michigan courts generally apply the law of the defamed party's domicile to defamation claims. *See Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 734 (E.D. Mich. 2000).

The parties have not suggested that there is a material difference between Louisiana

18

and Michigan law with respect to defamation.  Accordingly, the Court will apply Michigan law.

The elements of a defamation claim under Michigan law are:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).

Stryker moves to dismiss Ridgeway's defamation claim because it lacks specificity. Stryker also contends that, because the allegedly defamatory statements were not made to Biomet, there is no causal connection between the defamation and the breach of contract.

Ridgeway has alleged that specific individuals "were told" that Ridgeway had dishonestly overbilled, dishonestly overcharged, and engaged in dishonest conduct. Ridgeway has not specified who made the statements or when they were made, but he does allege to whom they were made and their content.  (Countercl. ¶ 73.)  He has alleged not only that the defamatory statements caused him to lose income from his business dealings with Biomet. but that they also injured his reputation among his medical customers.  (Countercl. ¶¶ 54, 77.)

Although Michigan courts require defamation claims to be pleaded with specificity, *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 299 (Mich. Ct. App. 1991), the federal rules do not.  *See* Fed. R. Civ. P. 9.  Stryker does not argue, and it does not appear,

that the Michigan defamation pleading requirement is part of the state's substantive law that the federal court is bound to follow under *Erie*.  *See Mangan v. Corp. Synergies Grp., Inc*., 834 F. Supp. 2d 199, 203 (D.N.J. 2011)(holding that federal notice pleading standards rather than New Jersey heightened pleading standards governed the sufficiency of the defamation claim alleged).  The Court is satisfied that Ridgeway's defamation allegations are sufficient under the federal notice pleading standards to withstand Stryker's motion to dismiss.

F.  Fraud/Misrepresentation (Michigan law)

Ridgeway's fraud claim under Michigan law is  based on his assertion that Stryker represented to Ridgeway that he did not have a non-compete agreement, that the representation was false, and that Ridgeway relied on the representation to his detriment.[2] Stryker moves to dismiss the fraud claim because it lacks specificity.

To establish fraud under Michigan law, a plaintiff must prove:

a. Defendant made a representation of a material fact.
b. The representation was false when it was made.
c. Defendant knew the representation was false when it made it, or defendant made it recklessly, that is, without knowing whether it was true.
d. Defendant made the representation with the intent that plaintiff rely on it.
e. Plaintiff relied on the representation.
f. Plaintiff was damaged as a result of his reliance.

Mich. Civ JI 128.01.

---

[2]Although the title of Count VI also references innocent misrepresentation, Ridgeway has advised that the reference to innocent misrepresentation was an editing error and can be disregarded by the court.  (Ridgeway Br. 24 , ECF No. 90.)

Rule 9(b) of the Federal Rules of Civil Procedure requires that in alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In keeping with this requirement, "the plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012). Failure to indicate "when, where, or to whom the alleged misstatement was made" is "fatal." *Id.*

Ridgeway has not alleged the particular circumstances constituting fraud with sufficient particularity to satisfy the Rule 9(b) pleading requirements. Ridgeway has merely alleged in Count VI that Stryker made repeated statements or admissions that it did not have a non-compete agreement with Ridgeway. (Countercl. ¶¶ 79-80.) Contrary to Ridgeway's assertions, the preceding allegations that are incorporated into Count VI by reference do not cure the lack of particularity problem. Ridgeway alleges merely that Stryker admitted on numerous occasions during his twelve years of employment that he had no non-compete agreement, that these statements were made by supervisors and managers of the Human Resources Department, that he was repeatedly asked to sign a non-compete agreement, and that in 2012 a non-compete agreement was surreptitiously slipped into an offer for stock options. (Countercl. ¶¶ 25-30.)

Ridgeway has referenced an affidavit he filed earlier in this case where he outlined the specific representations with more specificity. (ECF No. 37, Ex. 2.) Ridgeway contends

that the allegations in the counterclaim, together with the declaration, more than adequately inform Stryker of the circumstances of his fraud claim.

The Sixth Circuit has advised that Rule 9(b) is not to be read in isolation, but to be interpreted in conjunction with the liberal notice pleading policies embodied in Rule 8. "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 503 (6th Cir. 2007). Although Ridgeway contends that the declaration serves the purpose of giving defendant notice as to the particulars of its alleged misconduct, the Court is not aware of any rule or case law providing that Rule 9(b) obligations can be satisfied by a declaration separate from the complaint. Moreover, the declaration merely names individuals who stated that Ridgeway did not have a non-compete agreement. It does not indicate when or where the statements were made, or what made the statements fraudulent. The Court concludes that Ridgeway has not satisfied his pleading obligations under Rule 9(b). However, rather than dismissing his fraud claim for lack of particularity, the Court will permit Ridgeway an opportunity to amend his complaint to state with particularity the circumstances constituting fraud.

G. Detrimental Reliance/Promissory Estoppel

Ridgeway has filed a claim for detrimental reliance under Louisiana and Michigan law. (Countercl. Count VII.) Ridgeway alleges, in support of this claim, that Stryker

repeatedly told him he had **no** non-compete agreement, and that he relied on this representation when he entered into the agreement to work on behalf of Biomet.

There is no dispute that detrimental reliance is not an independent cause of action under Michigan law. However, despite the title of Count VII, Ridgeway contends he has adequately stated a promissory estoppel claim under Michigan law.

Louisiana has a statutorily recognized cause of action for detrimental reliance which provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code art. 1967. The elements of a claim for detrimental reliance under Louisiana law are: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Luther v. IOM Co. LLC*, 130 So. 3d 817, 825 (La. Oct. 15, 2013).

 The elements of a claim of promissory estoppel under Michigan law are:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if  injustice is to be avoided.

*Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999).

The Court assumes, for purposes of this motion, that Michigan law will apply to this issue. Ridgeway has not suggested that there is a sufficient conflict between Louisiana law and Michigan law, or a sufficiently compelling interest on the part of Louisiana such that Michigan courts would choose to follow Louisiana law as opposed to Michigan law.

Stryker asserts that Ridgeway does not have a promissory estoppel claim because he has not identified a "clear and definite" promise. *See Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1133 (W.D. Mich. 1997) (Scoville, M.J.). "[T]he sine qua non of the theory of promissory estoppel is that the promise be clear and definite." *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993). Stryker also asserts that Ridgeway has not alleged that Stryker reasonably expected to induce action on his part when they told him he had no non-compete agreement, and that he has not alleged that he contracted with Biomet in reliance on those representations. Stryker contends that because Stryker told him that he had a non-compete agreement at his exit interview, which occurred before he contracted with Biomet, he cannot show reliance.

Stryker reads the complaint too narrowly. Stryker terminated Ridgeway's employment before Ridgeway entered into a contract with Biomet. Reading the complaint in the light most favorable to Ridgeway, and drawing all inferences in Ridgeway's favor, the complaint can be understood to allege that Ridgeway relied on the representations that there was no non-compete agreement when he first started negotiating with Biomet, and he was harmed by that reliance when Stryker terminated his employment.

In addition, *Cole*, cited by *Stryker*, evaluated the sufficiency of the plaintiff's proofs on summary judgment. It did not address the pleading requirement for a promissory estoppel claim. Whether Ridgeway can come forward with evidence of a "clear and definite" promise, with evidence that Stryker reasonably expected to induce action on his part, and

with evidence that he reasonably relied on Stryker's representations are matters that are not ripe for consideration on this motion to dismiss. The Court is satisfied that the pleadings themselves are sufficient to state a claim of promissory estoppel under Michigan law. Accordingly, Stryker's motion to dismiss the promissory estoppel claim will be denied.

H.  Abuse of Process

Ridgeway and Stone Surgical have alleged claims for abuse of process. (Countercl. Count VIII; SS Am. Compl. Count VI.) They allege that Stryker abused the legal process by filing the action against Ridgeway and Biomet for the ulterior purpose of damaging Ridgeway and Stone Surgical, and that, as a corroborating act, they filed the Krupinski affidavit that falsely stated that the non-compete agreement attached to the complaint was a "true and correct copy of Ridgeway's Agreement."

Ridgeway and Stone Surgical's counterclaim and amended complaint do not indicate what law governs this claim. However, in their briefs they contend that the claim should be considered under both Louisiana and Michigan law.

Ridgeway and Stone Surgical's abuse of process allegations stem from Stryker's filing of this litigation in Michigan. As a general rule, abuse of process claims are determined under the local law of the state where the proceeding complained of occurred. *See* Restatement (Second) Conflict of Law § 155. Ridgeway and Stone Surgical have not asserted that Louisiana law on abuse of process is in conflict with Michigan law, nor have they suggested that Louisiana has an overriding interest in applying its own law on abuse of

25

process.  For all these reasons, the Court will apply Michigan law to the abuse of process claim.

The elements of an abuse of process claim under Michigan law are: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981).[3]  Stryker contends that Ridgeway and Stone Surgical's claims fail under both elements.

Ridgeway has alleged that Stryker's ulterior purpose was "to cause vexation, trouble, embarrassment, damage to [Ridgeway's] professional reputation, and damage to [Ridgeway's] community reputation and as retaliation for [Ridgeway's] desire to change employment." (Countercl. ¶ 88.)  Stone Surgical has alleged that Stryker's ulterior purpose was "purely to eliminate Stone Surgical, LLC as a business competitor by deceiving Biomet into believing that there was a genuine non-compete agreement that legally prohibited Christopher Ridgeway from selling Biomet medical devices."  (SS Am. Compl. ¶ 53.) Ridgeway and Stone Surgical contend that Stryker could not pursue a legitimate claim for violation of a non-compete agreement because such an agreement did not exist.  Thus, they argue that Stryker had an ulterior motive to use the machinery of the courts and the specter of civil liability to trick Biomet into terminating its business relationship with Ridgeway and Stone Surgical.

---

[3]The elements of an abuse of process claim under Louisiana law are:  "(1) the existence of an ulterior purpose; (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Ioppolo v. Rumana*, 581 F. App'x 321, 325 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1896 (2015).

Abuse of process has been described as a situation where the defendant has used "a proper legal procedure for a purpose collateral to the intended use of that procedure." *Bonner v. Chicago Title Ins. Co.*, 487 N.W.2d 807, 812 (Mich. Ct. App. 1992) (citing *Vallance v. Brewbaker*, 411 N.W.2d 808 (Mich. Ct. App. 1987)).   Michigan courts   require "some corroborating act that demonstrates the ulterior purpose." *Bonner*, 487 N.W.2d at 812.  "A bad motive alone will not establish an abuse of process." *Id.*  "[T]he ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 N.W.2d 830, 835 (Mich. Ct. App. 1986) (citing *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 350 N.W.2d 790, 795-96 (Mich. Ct. App. 1984)).

An ulterior purpose is a purpose secondary to the suit:

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.  There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Three Lakes Ass'n v. Whiting*, 255 N.W.2d 686, 690 (Mich. Ct. App. 1977) (quoting Prosser, Torts (4th ed.), § 121, p. 857).  Ridgeway's allegations that Stryker used the action against him to damage his reputation and to retaliate against him are not sufficient to allege an ulterior purpose.

The requirement of a collateral purpose is also not met if the allegedly ulterior purpose is consistent with the purpose of the action.  To the extent Ridgeway and Stone Surgical

allege that Stryker used the action to prevent them from competing with Stryker, they have not identified a motive that is inconsistent with Stryker's claim for breach of the employment contract.

In *Sage International, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381 (E.D. Mich. 1982), the court held that the plaintiffs had failed to state a claim for abuse of process. *Id.* at 389. In *Sage*, the plaintiffs alleged that the defendants' ulterior purpose in bringing the prior action was to prevent the plaintiffs from competing. The court held that the plaintiffs had failed to make out a claim for abuse of process because the motive of preventing plaintiffs from competing was indistinguishable from the ostensible purpose of their prior action to prevent the plaintiffs from competing with defendants through the use of defendants' trade secrets and proprietary information. *Id.*; *see also Foster-Woutinen v. Jones*, No. 285150, 2009 WL 3837407, at *7 (Mich. Ct. App. Nov. 17, 2009) (dismissing abuse of process claim where the plaintiffs' alleged motive of filing suit to enhance their property value and to exclude others from the property was not a purpose collateral to its quiet title action or its allegations of trespass and nuisance).

Stryker's stated purpose in bringing suit against Ridgeway and Biomet is to enforce the terms of Ridgeway's alleged employment agreement. Accordingly, preventing Ridgeway and Stone Surgical from competing with Stryker through a contract with Biomet is not an ulterior purpose, but a legitimate and integral part of Stryker's suit for breach of contract against Ridgeway. The Court concludes that Ridgeway and Stone Surgical have failed to allege an ulterior purpose.

The second element of an abuse of process claim is "an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman*, 312 N.W.2d at 594.

The improper act alleged by Ridgeway and Stone Surgical is Stryker's filing of a complaint with an allegedly fabricated and fictitious non-compete agreement and an allegedly false affidavit from Krupinski, and serving them on Biomet. (Countercl. ¶¶ 90-92; (SS Am. Compl. ¶ 52.)

Stryker contends that Ridgeway cannot show that Stryker engaged in any illegitimate or unauthorized act which is improper in the regular course of a proceeding because Ridgeway has admitted to signing a non-compete agreement and because the Court has found that Stryker made a prima facie showing that Ridgeway signed the Agreement attached to Krupinski's affidavit. Stryker's argument improperly relies on what it believes the evidence will show. On this motion to dismiss, the Court is concerned only with allegations.

Ridgeway and Stone Surgical's allegation that Stryker fabricated evidence and filed it together with a false affidavit is clearly the allegation of an "abuse." Nevertheless, such an allegation is not in itself sufficient to make out an abuse of process claim. As the *Gage* court has noted, "'abuse of process' is a term of art and thus, while the subornation of perjury is certainly an 'abuse,' such an act, standing alone, does not necessarily make out the tort" of abuse of process. *Sage*, 556 F. Supp. at 390. The *Gage* court noted that it was not aware of "any instance in which an allegation that defendants induced perjured testimony has been held to satisfy the second element of an abuse-of-process claim." *Id*. at 389. The *Gage*

court also noted that the "[p]laintiff must allege that defendant committed a specific act which was directed at the collateral, ulterior objective." *Id.* at 390.

Ridgeway and Stone Surgical have not alleged any improper act designed to further a collateral or ulterior objective. Stryker's actions (fraudulent or not) were designed to further its lawsuit against Ridgeway and Biomet. The Court does not intend to minimize the seriousness of Ridgeway and Stone Surgical's allegations that Stryker filed a false affidavit with the Court. However, abuse of process is not the arena for dealing with this claim. The law deals with subornation of perjury by other means. *Id.* Moreover, Stryker itself will need to prove that the non-compete agreement was not fraudulent in order to prevail on its breach of contract claim.

Ridgeway and Stone Surgical's allegations of an improper act also fail to satisfy the second element of an abuse of process claim because they are based on Stryker's initiation of the suit. Michigan cases have made it clear that an "action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Friedman*, 312 N.W.2d at 595 (citing *Spear v. Pendill*, 130 N.W.2d 343, 344 (Mich. 1911)); *see also VC, Inc. v. Kraft Foods Global, Inc.*, No. 304506, 2013 WL 6921519, at *6 (Mich. Ct. App. Dec. 26, 2013); *Kloian v. O'Jack*, No. 301544, 2012 WL 205833, at *2 (Mich. Ct. App. Jan. 24, 2012); *Chabiaa v. Aljoris*, No. 300390, 2012 WL 555792, at *6 (Mich. Ct. App. Feb. 21, 2012). This requirement is not a mere formality. If the court were to allow an abuse of process claim based merely on an allegation that the complaint was false, every

30

disputed claim could give rise to a counter-claim of abuse of process. That is not the purpose of the abuse of process claim.

For all these reasons, the Court finds that Ridgeway and Stone Surgical have not stated a claim for abuse of process. Stryker's motion to dismiss their abuse of process claims will accordingly be granted.

I. Attorney's Fees

Ridgeway has filed a claim for attorney's fees pursuant to Louisiana Civil Code art. 1958. (Counter Cl. Count IX.) Article 1958 provides that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." La. Civ. Code art. 1958. Ridgeway has not filed a claim for rescission of a contract. Accordingly, his request for attorney fees will be dismissed.

J. Civil Conspiracy

Count X of Ridgeway's counterclaim is a claim for civil conspiracy. Ridgeway alleges that Stryker Corporation and Howmedica Osteonics Corporation conspired to eliminate competition and to render Ridgeway unemployable. Stryker contends that Ridgeway's conspiracy claim is barred by the intra-corporate conspiracy doctrine.

It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy." *Hull v. Cuyahoga Valley Jt. Voc. Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Under the intra-corporate conspiracy doctrine, which proceeds from this general rule, a corporation cannot conspire with itself or with its own agents or employees.

31

*Upton v. City of Royal Oak*, 492 F. App'x 492, 504 (6th Cir. 2012) (citing *Hull*, 926 F.2d at

510, and *Doherty v. Am. Motors Corp*, 728 F.2d 334, 339 (6th Cir. 1984)).

Stryker contends that because Howmedica is a subsidiary of Stryker, the intra-

corporate conspiracy doctrine bars Ridgeway's conspiracy claim. Ridgeway contends that

the doctrine has only been applied to individual employees of a corporate defendant, and that

the doctrine has never been applied to bar a conspiracy action against two separate legal

entities such as a parent corporation and its subsidiary. Stryker has cited only one case that

supports its contention that a parent corporation cannot conspire with its subsidiary.[4] In

*Williamson v. Ocwen Loan Serv., LLC*, No. 3:09-0514, 2009 WL 5205405 at *5 (M.D. Tenn.

Dec. 23, 2009), the court held that a parent company, its subsidiary and their employees

could not conspire with each other to violate RICO. *Id.* at *5.

The Court is not persuaded to follow *Williamson*'s holding that a parent corporation

cannot conspire with its subsidiary. Michigan courts respect the corporate form, and presume

that, absent some abuse of corporate form, parent and subsidiary corporations are separate

and distinct entities. *Seasword v. Hilti, Inc*., 537 N.W.2d 221, 224 (Mich. 1995); *see also*

---

[4]Although Stryker cited three cases in support of its claim, neither *Hull* nor *Upton*
support Stryker's assertion that the intra-corporate conspiracy doctrine bars a claim between
a parent corporation and its subsidiary. In *Hull*, the court held that the plaintiff could not
allege a conspiracy between a school district superintendent, the executive director of the
district, and a school administrator, because they were all members of the same collective
entity, the school board. 926 F.2d at 510. In *Upton*, the court held that the intracorporate
conspiracy doctrine barred a conspiracy claim against a city and city officials. 492 F. App'x
at 493, 507.

*Fleischhauer v. Fletner*, 879 F.2d 1290, 1297 (6th Cir. 1989) (rejecting contention that corporations could not conspire with individual co-defendant who owned 100% of the corporations' shares). Moreover, while acknowledging that there was conflicting authority, the *Williamson* court gave no rationale for its assertion that the Eighth Circuit's opinion in *Fogie v. Thorn Americas, Inc*., 190 F.3d 889, 898 (8th Cir.1999), was most closely aligned with the Sixth Circuit law of conspiracy. 2009 WL 5205405 at *5 n.1.

There may be circumstances where a parent corporation and a subsidiary corporation cannot be considered separate legal entities, such as where the subsidiary is the agent of the parent, or where the corporate veil is pierced. However, such an argument would require factual development that is not proper on a motion to dismiss. Stryker has not persuaded the Court that Ridgeway has failed to state a conspiracy claim on which relief can be granted. Accordingly, Stryker's motion to dismiss Ridgeway's conspiracy claim will be denied.

K. Unjust Enrichment

Stone Surgical has filed a claim for unjust enrichment under Louisiana law, La. Civ. Code art. 2298. (SS Am. Compl. Count III.) The elements of a claim for unjust enrichment are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "Unjust enrichment is only applicable to fill a gap in the law where no other remedy is provided for by law." *Nature Conservancy v. Upland Props., LLC*,

48 So.3d 1257, 1261 (La. Ct. App. 2010). "The mere fact that there are alternative remedies available precludes a claim for unjust enrichment." *Westbrook v. Pike Elec., L.L.C.*, 799 F. Supp. 2d 665, 672 (E.D. La. 2011). "[W]hether plaintiff succeeds or not with respect to his other claims is immaterial." *Id.* In *Westbrook* the court dismissed the plaintiff's unjust enrichment claim because the plaintiff had also alleged causes of action based on breach of contract, breach of implied duty of good faith, and a violation of the LUTPA. *Id.*; *see also Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746, 756 (E.D. La. 2012) (dismissing unjust enrichment claim where the plaintiff pled an action in tort, thus demonstrating that another legal remedy was available).

Because Stone Surgical has stated claims for tortious interference and for violation of LUTPA, it has not demonstrated that no other legal remedy is available. Accordingly, Stone Surgical's unjust enrichment claim will be dismissed.

## L. Negligence

In Count VII of its amended complaint, Stone Surgical alleges that Stryker negligently pieced together copies of separate instruments in order to claim a genuine non-compete agreement, and breached a duty to Stone Surgical to attach only accurate signed documents to a complaint.

Stone Surgical's amended complaint does not identify what law will govern its negligence claim. It argues, however, that it has alleged a claim under Louisiana Civil Code section 2315 which broadly provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

The Court is not convinced that Louisiana has a sufficient interest in having its negligence law applied that would overcome the presumption that Michigan law applies.

Stryker contends that Stone Surgical's negligence claim is subject to dismissal because Stone Surgical cannot plead a negligence claim based on what it contends was intentional conduct. *See VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004) (noting that Michigan courts have rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence).

Stone Surgical asserts that the negligence claim is pled in the alternative to cover the possibility that Stryker will claim that the assembly of the non-compete agreement was a simple mistake. Although Stryker denies it was a mistake, the Court cannot say that Stone Surgical has failed to state a claim of negligence based on independent conduct. *See Bell v. Porter*, 739 F. Supp. 2d 1005, 1115 (W.D. Mich. 2010) (holding that although the excessive force claim was based on the same incident as the assault and battery claim, the plaintiff adequately alleged an alternative basis for the claim that did not rely on an intentional, offensive touching).

Stryker also contends that Stone Surgical's negligence claim is subject to dismissal because Stone Surgical has not alleged that Stryker owed a cognizable legal duty to Stone Surgical.

It is a basic principle of Michigan negligence law that

Before there can be "a  breach of a legal duty," there must be a legal duty. Without owing a duty to the injured party, the "negligent" actor could not have

proximately caused the injury and could not be at "fault" for purposes of the comparative fault statutes.

*Romain v. Frankenmuth Mut. Ins. Co.*, 762 N.W.2d 911, 913-14 (Mich. 2009) (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 683 (Mich. 1992)). Stryker contends that it owed no legal duty to Stone Surgical to attach only accurate signed documents to a complaint filed in litigation against a third-party. The Court agrees. Stone Surgical has not identified any Michigan law that would support the imposition of a duty owed by Stryker to Stone Surgical in the context of the Ridgeway litigation. Accordingly, Stone Surgical's negligence claim will be dismissed.

M.  Unfair Competition

In Count VIII of its amended complaint, Stone Surgical alleges that Stryker engaged in unfair competition in violation of Michigan law.

Stryker moves for dismissal of the unfair competition claim based on its contention that the conduct of which Stone Surgical complains is not a trade practice because all of the conduct arose solely in the context of the Stryker/Ridgeway litigation.

"Unfair competition 'prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public.'" *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, No. 1:10-CV-450, 2013 WL 4498993, at *31 (W.D. Mich. Aug. 19, 2013) (quoting *Consol. Rail Corp. v. Grand Trunk W. R.R.Co.*, No. 09-10179, 2009 WL 3460334, at *14 (E.D. Mich. Oct.22, 2009)).

36

Stone Surgical contends that it has pled facts which demonstrate that Stryker undertook actions which were unfair and unethical trade practices harmful to its competitor, Stone Surgical.

On review of the complaint as a whole, and drawing all inferences in the light most favorable to Stone Surgical, the Court is satisfied at this stage of the litigation that Stone Surgical has alleged sufficient facts to support a plausible claim of unfair competition. Accordingly, Stryker's motion to dismiss Stone Surgical's unfair competition claim will be denied.

## V.  Conclusion

For the reasons stated herein, Stryker's motion to dismiss Ridgeway's counterclaim will be granted in part and denied in part, and Stryker's motion to dismiss Stone Surgical's amended complaint will be granted in part and denied in part.  Specifically, the Court will dismiss Counts III, IV, VIII, and IX of Ridgeway's counterclaim alleging tortious interference with contract under Louisiana and Michigan law, fraud under Michigan law, abuse of process, and attorney's fees, and will grant Ridgeway leave to amend Count VI alleging fraud under Michigan law.  The Court will dismiss Counts III, IV, VI and VII of Stone Surgical's Amended Complaint alleging unjust enrichment, tortious interference under Louisiana law, abuse of process and negligence.

An order consistent with this opinion will be entered.

Dated: September 10, 2015                          /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE