UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION, et al.,

       Plaintiffs,

                                   Case No.  1:13-CV-1066

v.

                                   HON. ROBERT HOLMES BELL

CHRISTOPHER RIDGEWAY, et al.,

       Defendants.

and

STONE SURGICAL, LLC,

       Plaintiff,

v.                                   Case No. 1:14-CV-889

STRYKER CORPORATION, et al.,

       Defendants.

_____/

## O P I N I O N

This matter is before the Court on Defendant Christopher Ridgeway's motion for partial summary judgment on the breach of contract claim found in Count I of the complaint filed by Plaintiffs Stryker Corporation and Howmedica Osteonics Corporation (collectively "Stryker").  (ECF No. 118.)[1]  For the reasons that follow, the motion will be denied.

---

[1]This motion is also found at ECF No. 75 in consolidated Case No. 1:14-CV-889.

## I.

Count I of Stryker's amended complaint alleges breach of a non-compete agreement. Ridgeway seeks summary judgment on this claim based on his contention that Stryker cannot produce evidence sufficient to create a jury issue as to the existence or terms of the alleged non-compete agreement, and his contention that even if the non-compete agreement exists, it cannot be enforced.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant carries his burden of showing there is an absence of evidence to support a claim, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)

(stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).  Nevertheless, the mere existence of a scintilla of evidence in support of  the non-moving party's position is not sufficient to create a genuine issue of material fact.  *Liberty Lobby*, 477 U.S. at 252.  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

Ridgeway moves for summary judgment on Stryker's contract claim based on his assertion that Stryker is unable to produce sufficient admissible evidence to enable a jury to determine the existence or terms of the alleged non-compete agreement.

The proponent of a contract has the burden to establish its existence and terms. *Huntington Nat. Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. Ct. App.), *appeal denied*, 853 N.W.2d 703 (Mich. 2014).  "Michigan courts will not lightly presume the existence of an enforceable contract because . . . the courts cannot make a contract for the parties when none exists."  *Id.* (citation and internal quotation marks

omitted). Nevertheless, "the party seeking to enforce an agreement need not produce a written copy of the agreement, as long as the party can produce some written evidence that establishes the agreement's essential terms." *Id.* (citing Mich. Comp. Laws § 566.132(1)).

Stryker has produced a single-page faxed document signed by Ridgeway, marked as page "9," and bearing the number 573287.03. Ridgeway has admitted that the signature on that page is his, but he has no memory of what document the signature page corresponds to. Stryker has produced the cover sheet of Ridgeway's 4-page fax, indicating that he was returning signed copies of his "offer letter, non-compete agreement, and code of conduct." Stryker has also produced evidence that the number 573287.03 is the control number for an 8-page form non-compete agreement used by Stryker's Craniomaxillofacial ("CMF") division from 2001 to 2005. Stryker has attached the form non-compete agreement as Exhibit B to its amended complaint. (ECF No. 23.)

Ridgeway's motion for summary judgment focuses on the lack of an original signed copy of the non-compete agreement, the lack of any witness with personal knowledge that the unsigned 8 pages were actually transmitted to and received by Ridgeway, the lack of any evidence that the agreement was not altered before being signed by Ridgeway, and the statements by Stryker employees that Ridgeway did not have a non-compete agreement.

The Rules of Evidence provide that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. However, "[a] duplicate is admissible to the same extent

as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003.

Ridgeway has raised questions as to the authenticity of the non-compete agreement. He has presented evidence that Stryker faxed what it identified as a "Nondisclosure and Noncompetition Agreement" to Ridgeway, while the document Stryker relies on is titled "Employee Non-Compete Agreement."  He has presented evidence that not all non-compete agreements used by Stryker are identical and that it was not unusual for non-compete agreements to have changes or alterations made as the result of negotiations with individual employees.  He has presented evidence that the form number on the page with Ridgeway's signature appears to be off-center, and that, contrary to stryker's routine practice, the signature page was not signed by Jonathan Bagrosky of Stryker's Human Resources Department.  He has also presented evidence that some of the declarations of Stryker witnesses are contradicted by other evidence.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  "'To establish authenticity, the proponent need not rule out all possibilities inconsistent with authenticity or prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication is one of 'reasonable likelihood' that the evidence is authentic." *United States v. Scott-Emuakpor*, No. 1:99-CR-138, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000) (quoting 5 J.

Weinstein & M. Berger, *Weinstein's Federal Evidence* § 901.02 [2], at 901-8-901-9 (2d ed.1997)).

Certain items of evidence are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted, including:

> (11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.

Fed. R. Evid. 902.  Rule 803(6) provides that records of regularly conducted activity are not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803.

Ridgeway contends that the form agreement Stryker is relying on is hearsay that does not meet the business records exception to the hearsay rule because Sarah Krupinsky was not employed by Stryker in 2001, and  Jonathan Bagrosky, the custodian of records in 2001, is unable to establish the record as falling within Rule 803(6).  Ridgeway contends that without eye witness testimony or authentic records, Stryker is unable to carry its burden of proof to

establish the terms of any written agreement received by Ridgeway.

Stryker's response to the issues raised by Ridgeway includes evidence that the form non-compete agreement was the exclusive agreement used by Stryker's CMF division from 2001 to 2005; that no one with authority negotiated or agreed to any modification of the terms of Ridgeway's form agreement; that failure to sign the non-compete agreement would have resulted in termination of the employment offer; that some other employees' files contain only the signature page of the form non-compete agreement; that other employees' files use references to "Nondisclosure and Noncompetition Agreement" and "Employee Non-Compete Agreement" to refer to the same document; that other employees' non-compete agreements were not signed by Bagrosky; that the non-conforming agreements Ridgeway relies on are from outside the CMF division or outside the relevant 2001 to 2005 time period when the form with control number 573287.03 was used; and that no one at Stryker advised Ridgeway that he did not have a non-compete agreement.

Contrary to Ridgeway's argument, Bagrosky is not the only individual who can testify as a custodian of the records. Rule 803(6)(D) allows testimony from "the custodian or another qualified witness." Krupinsky is not necessarily prohibited from testifying about 2001 business records merely because she was not employed by Stryker in 2001. *See*, *e.g.*, *Conner v. Nicholson*, No. 4:04-CV-100, 2006 WL 1722230, at *5 (W.D. Mich. June 21, 2006) (Quist, J.) (permitting records custodian to testify regarding authenticity of employment records compiled before he became the records custodian). Moreover, the Court

cannot say as a matter of law that Eric Teutsch, as the Vice President and General Manager of Stryker's CMF division in 2001, and Michael Puca, as an attorney in the Stryker Legal Department in 2001, are not qualified to testify regarding Stryker policies and practices concerning the execution and retention of non-compete agreements.

> Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, to be an other qualified witness, it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation.

*United States v. Salgado*, 250 F.3d 438, 451-52 (6th Cir. 2001) (internal citations and quotation marks omitted).

Ridgeway has raised significant challenges to Stryker's evidence regarding the non-compete agreement. Nevertheless, this Court is not permitted to weigh the evidence on summary judgment. Viewing the evidence in the light most favorable to Stryker, as the Court is required to do, the Court is satisfied that Stryker has presented sufficient evidence to create material questions of fact for trial as to whether there is a "reasonable likelihood" that Exhibit B, the form agreement, is an authentic copy of what Ridgeway signed.

**IV.**

Even if Stryker has sufficient evidence to create a triable issue as to the existence and terms of the alleged non-compete agreement, Ridgeway contends that he is nevertheless entitled to summary judgment on Stryker's breach of contract claim because application of

8

Michigan law would violate Louisiana fundamental policy as expressed in a Louisiana statute, La. Rev. Stat. § 23:921.[2]

The form non-compete agreement attached as Exhibit B to Stryker's amended complaint provides that it "shall be construed in accordance with and governed for all purposes by the law of the State of Michigan." (Am. Compl., Ex. B, Agrmt. ¶ 13.)

As a federal court sitting in diversity, this Court applies the substantive law of the state in which it sits, including the state's choice-of-law rules. *Equitable Life Assur. Soc. of United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co., Inc*., 313 U.S. 487, 496 (1941) (observing that forum state's choice-of-law rules are substantive). In deciding contract choice-of-law issues, Michigan courts are guided by the policies expressed in the

---

[2]The Louisiana statute provides in pertinent part:

(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

. . . .

C. Any person . . . who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. . . .

La. Rev. Stat. § 23:921(A).

Restatement (Second) of Conflicts of Laws §§ 187, 188. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Under the Restatement, a contract's choice-of-law provision is binding unless

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2). Subsection (a) does not apply because Michigan clearly has a substantial relationship to the parties and the transaction because Stryker is located in Michigan and the parties had a reasonable basis for choosing Michigan law, namely, to ensure that Stryker will have some certainty in defending its rights in suits with its employees all over the country. *See Lowry Computer Prods., Inc. v. Head*, 984 F. Supp. 1111, 1114 (E.D. Mich. 1997) (noting that a national company has a strong interest in the uniform interpretation of employment contracts). Under subsection (b), Michigan courts will only apply Louisiana law if application of Michigan law would be contrary to a fundamental policy of Louisiana, and if Louisiana has a materially greater interest than Michigan in determining the effect of the non-compete agreement.

Michigan has a statute specifically allowing covenants not to compete as long as they are reasonable as to duration, geographical area, and the type of employment. Mich. Comp. Laws § 445.774a(1). Ridgeway contends that because Louisiana has a law generally

disallowing non-compete agreements, application of Michigan law would violate fundamental Louisiana public policy.

Courts have held that Louisiana has a "strong public policy against covenants not to compete." *L & B Transp., LLC v. Beech*, 568 F. Supp. 2d 689, 693 (M.D. La. 2008); *see also SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001) ("Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees.")  Nevertheless, Louisiana does not completely prohibit noncompetition clauses.  *See* La. Rev. Stat. § 23:921(C) (providing that a noncompetition clause may be valid "within a specified parish or parishes, municipality or municipalities, or parts thereof . . . not to exceed a period of two years from termination of employment").  In *Zimmer, Inc. v. Sharpe*, 651 F. Supp. 2d 840 (N.D. Ind. 2009), the court held that applying Indiana law pursuant to the parties' contractual choice of law provision would not violate Louisiana's fundamental public policy with respect to non-competition agreements.  *Id.* at 852; *see also Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 168 (3d Cir. 2011) (noting in dicta that because Louisiana courts do not categorically refuse to enforce noncompetition agreements, the high threshold for establishing a "fundamental policy" in Louisiana against application of the Delaware non-compete law would likely not be met).

The Sixth Circuit has cautioned that courts should "move cautiously when asked to hold contract clauses unenforceable on public policy grounds."  *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 362 (6th Cir. 1993) (quoting *Moses v. Bus. Card Express,*

11

*Inc*., 929 F.2d 1131, 1139 (6th Cir. 1991)). Because Michigan law only allows non-competition agreements that are reasonable as to duration, geographical area, and the type of employment, and because Louisiana will also enforce non-competition agreements that are limited in scope, the Court finds that application of Michigan law would not violate any fundamental policy of Louisiana.

Moreover, even if the court were to find that application of Michigan law would be contrary to a fundamental Louisiana policy, that finding would not end the inquiry. Michigan courts would only apply Louisiana law if they determined that Louisiana had a materially greater interest than Michigan in the determination of the breach of contract issue.

Ridgeway contends that Louisiana has a materially greater interest than Michigan in the non-compete agreement because Stryker chose to do business in Louisiana; Ridgeway is a citizen of Louisiana; Stryker employed Ridgeway in Louisiana; and Ridgeway's sales territory was limited to Louisiana. In support of his contention, Ridgeway cites *United Rentals (N. Am.), Inc. v. Myers*, No. 3:03CV589, 2003 WL 23507021, at *3 (D. Conn. Apr. 22, 2003) (applying Louisiana rather than Connecticut law because non-competition, forum selection, and choice of law clauses contravened Louisiana public policy).

Although Ridgeway has identified substantial interests on the part of Louisiana, he ignores the fact that Michigan also has a significant interest in applying its law to the breach of contract issue. Stryker is a Michigan corporation with its principal place of business in Michigan. Because the employment relationship was rooted in Michigan, the harm would

be felt in Michigan by a Michigan company. *See Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2008). Moreover, Michigan's public policy favors the enforcement of contractual choice-of-law provisions. *Robert A. Hansen Family Trust v. FGH Indus., LLC*, 760 N.W.2d 526, 532 (Mich. Ct. App. 2008) (noting that it is "undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions"); *see also Coface*, 430 F. App'x at 168 (holding that the employee's geographical contacts with Louisiana did not give Louisiana a "materially greater" interest than Delaware– the state where the employer was incorporated and located– and which had a substantial interest in enforcing a voluntarily negotiated contract clause that explicitly designated Delaware law to govern). The Court cannot say that Louisiana has a materially greater interest in the application of its law to this dispute. At best, Louisiana and Michigan have relatively equal interests in the application of their respective laws, and that is not sufficient to defeat the presumption that Michigan law applies.

For all the reasons stated, the Court declines to apply Louisiana law to Stryker's breach of contract claim.

## V.

Ridgeway's final argument is that he is entitled to judgment on Stryker's breach of contract claim because Stryker never signed or accepted any non-compete agreement with Ridgeway.

Under Michigan law, when a writing that purports to evidence a contract is signed by

13

fewer than all parties to the contract, the intention of the parties governs the question of whether a contract was formed. *Wiegand v. Tringali*, 177 N.W.2d 435, 437 (Mich. Ct. App. 1970); *see also Lowry v. Lauren Bienenstock & Associates Inc*., No. 317516, 2014 WL 7338880, at *5 (Mich. Ct. App. Dec. 23, 2014) (holding that the plaintiffs were bound by contract despite absence of defendants' signature); *McLaughlin v. Innovative Logistics Grp.*, *Inc.*, 2005 WL 2346418, at *3 (E.D. Mich. Sept. 26, 2005) (holding that although corporation did not sign the contract, the corporation's actions, including allowing the plaintiff to begin employment and paying him for his services, showed an intent to be bound); *Green v. Gallucci*, 426 N.W.2d 693, 695-96 (Mich. Ct. App. 1988) (holding that mutuality of assent was established when hospital offered participation agreements to doctors and doctors accepted them by signing, and therefore contract was formed regardless of the absence of the hospital's signature).

Stryker has presented evidence that it sent Ridgeway a non-compete agreement and that it would not have hired Ridgeway unless he signed the non-compete agreement. This evidence is sufficient to create an issue of fact as to the creation of a contract. Ridgeway relies on the affidavit of Jonathan Bagrosky, Stryker's Human Resources Manager in 2001, in an attempt to suggest that there could be no meeting of the minds because Bagrosky did not sign the non-compete agreement. Although Bagrosky stated that during his tenure as Human Resources Manager it was his practice to sign any non-compete agreement (Bagrosky Aff. ¶ 17), he acknowledged in his deposition that he did not sign every non-compete

14

agreement that was returned to Stryker (Bagrosky Dep. 108, 122-23), and that there were others who could have had knowledge of agreements and contracts with Ridgeway (*Id.* at 123-35).

There are numerous questions of fact concerning the 2001 records of Ridgeway's hiring that preclude this Court from finding, as a matter of law, that the non-compete agreement is not enforceable because it was not signed by Stryker.

For all the reasons stated herein, the Court will deny Ridgeway's motion for partial summary judgment on Stryker's breach of contract claim.

An order consistent with this opinion will be entered.

Dated: <u>September 21, 2015</u>                <u>/s/ Robert Holmes Bell</u>
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE