UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

    Plaintiffs,

v.

CHRISTOPHER RIDGEWAY, et al.,

    Defendants.

and

STONE SURGICAL, LLC,

    Plaintiff,

v.

STRYKER CORPORATION, et al.,

    Defendants.

_____/

Case No. 1:13-CV-1066

HON. ROBERT HOLMES BELL

Case No. 1:14-CV-889

# **O P I N I O N**

This matter is before the Court on Plaintiffs/Counter-Defendants Stryker Corporation and Howmedica Osteonics Corporation's motion for summary judgment on Defendant Christopher Ridgeway's counterclaims. (ECF No. 349).[1] Ridgeway opposes the motion and

---

[1] This motion is also found at ECF No. 302 in consolidated Case No. 1:14-CV-889.

Stryker [2] has filed a reply. (ECF Nos. 393, 417.) For the reasons that follow, the motion will be denied.

## I.

Following the Court's ruling on Plaintiffs' motion to dismiss (ECF Nos. 330, 331),[3] the claims remaining in Ridgeway's ten-count counterclaim are a claim under the Louisiana Unfair Trade Practices Act ("LUTPA") (Count I), a fraud claim under Louisiana law (Count II), a slander and defamation claim under Michigan law (Count V), a promissory estoppel/detrimental reliance claim (Count VII), and a civil conspiracy claim under Michigan law (Count X) (Answer to Am. Compl. and Counterclaim, ECF No. 76).[4]

Stryker now seeks summary judgment on all of these remaining claims based on its contention that there is no material issue of fact as to the following matters:

- Ridgeway received and executed the "Howmedica Leibinger Inc. d/b/a Stryker Leibinger Employee Non-Competition Agreement," the only non-compete that Stryker CMF used between 2000 and 2005;

---

[2] For purposes of this motion the Court will refer to Plaintiffs Stryker Corporation and Homedica Osteonics Corp. collectively as "Stryker" except where necessary to address Ridgeway's arguments regarding the status of each individual plaintiff.

[3] The Court dismissed Ridgeway's claims for tortious interference (Counts III & IV), abuse of process (Count VIII) and attorney's fees (Count IX) and dismissed without prejudice the fraud count sounding in Michigan law (Count VI). (ECF No. 331.)

[4] The Court determined that Ridgeway failed to state a claim for fraud under Michigan law (Count VI) and permitted Ridgeway an opportunity to amend his complaint to state a claim. (ECF No. 330.) Ridgeway has chosen not to pursue a fraud claim under Michigan law. (Ridgeway Resp. 19, ECF No. 393.)

2

- Stryker did not defame Ridgeway or speak negatively about him and Ridgeway has not presented any evidence that it did, let alone identify with any level of specificity to whom the purported defamatory statements were made, when they were made, where they were made, or the content of such statements; and

- Stryker did not "promise" Ridgeway that he did not have a non-compete or did not intend to induce action on his part.

Ridgeway opposes the motion. Upon review of Ridgeway's response, the Court finds that, contrary to Stryker's assertions, there are issues of fact as to each of these issues. Because Stryker's motion is premised on these alleged facts, and because there are material facts in issue, Stryker's motion will be denied.

## II.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine

issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In reviewing the record, the Court must not weigh the evidence, make credibility determinations or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013).

### III.

**A. Non-Compete Agreement**

Stryker does not have a full copy of the non-compete agreement it alleges Ridgeway signed. Stryker's documentary evidence of the agreement consists of a fax from Ridgeway, Ridgeway's signature on a page bearing document control number 573287.03, and a form non-compete agreement bearing document control number 573287.03. Stryker has also presented testimonial evidence from many Stryker officers and employees that the form agreement was the only non-compete form used by the Stryker CMF division from 2000 to 2005, that all sales representatives were required to sign the form non-compete agreement, and that they did not agree to any revisions of the form non-compete agreement. (*See, e.g.*, Teutsch Decl. ¶¶ 7-12, ECF No. 159-9; Puca Decl. ¶¶ 9-12, ECF No. 159-10; Krupinski 2d Suppl. Decl. 5-6, ECF No. 159-13.) Stryker has also presented evidence that between 2000 and 2005, approximately 130 newly hired CMF sales representatives signed the same non-compete agreement with the same document control number and terms. (Cameron Dep. 293-

4

94; Krupinski 2d Suppl. Decl. ¶¶ 7, 14.) Stryker also notes that because Ridgeway has no memory or recollection of Exhibit A attached to Plaintiffs' amended complaint, or what, if anything, he signed or returned to Plaintiffs at the time he was hired (Ridgeway Answers to Pls.' Suppl. Interrogs. at 3, ECF 351-30), he is not in a position to rebut Stryker's evidence regarding the non-compete agreement.

Although Ridgeway himself cannot deny the authenticity of what Plaintiffs contend is his agreement, he has pointed to circumstantial evidence that is sufficient to create issues of fact for trial regarding the existence and terms of his non-compete. He has pointed to evidence in the record that in its original complaint, Stryker falsely represented that it had attached a "true and correct copy" of Ridgeway's non-compete agreement even though Stryker did not have a copy of his non-compete agreement, and had attached a redacted copy of another individual's non-compete agreement. (Compl. ¶ 57; Suppl. Answers to Interrogs., ECF No. 386-1, PageID.9115-9116.) He has also pointed to evidence from the only two people who worked in the HR department in 2001, that contradict in some respect the statements Stryker relies on which come from newer HR employees, or employees who did not work in the HR department. Jonathan Bagrosky, the manager of Human Resources in 2001, testified that it was his practice to sign any contracts prepared for his signature, and yet he did not sign the document Stryker has presented. (Bagrosky Decl. ¶¶ 8, 17, ECF No. 90-1.) Susie Farrell testified that it was her practice to keep copies of all documents sent to prospective employees and to request that all pages be returned. (Farrell Decl. ¶ 9, ECF No.

5

90-2; Farrell Dep. 25-28, ECF No. 159-4.) Both Bagrosky and Farrell stated that not all employees had non-compete agreements, and the terms of the non-compete agreements were not all uniform. (Bagrosky Decl. ¶¶ 18-19; Bagrosky Dep. 131, ECF No. 386-5; Farrell Decl. ¶ 6.) Robert McKay, director of sales from 2006 to 2010, testified that not all salesmen had non-compete agreements. (McKay Decl. ¶ 4; ECF No. 18-1). Ridgeway has presented evidence of other non-compete agreements with the same document number that had different typed terms or had written changes to the terms. (*See* Giebelhaus 1998 Non-Compete, ECF No. 103-4; Washington July 2000 Non-Compete, ECF No. 121-2; Chonkich July 2000 Non-Compete, ECF No. 121-5.)

Ridgeway has also presented evidence that multiple people at Stryker advised him that he did not have a non-compete agreement in his personnel file. (Ridgeway Decl. ¶ 3, ECF No. 37-2.) Sarah Krupinski in the HR department has admitted that she told Ridgeway in 2012 that she did not see a non-compete agreement in his file. (Krupinski Dep. 30-32, ECF No. 351-5.) Krupinski followed this up with an email stating: "You are correct – we do not have a non-compete on file for you." (ECF No. 352-1.)[5] Ridgeway's boss, Robert McKay, recalls discussing in sales leadership and management meetings the fact that they did not

---

[5]Although Stryker contends that the conversation concerned only the lack of a new non-compete to support the stock option rather than the original non-compete, Krupinski's testimony on this matter is ambiguous at best. Krupinski testified that she did not recognize Ridgeway's existing non-compete agreement even though the existence or non-existence of a non-compete from 2001 when Ridgeway was hired was not relevant to whether he signed the latest non-compete to support a stock option in 2012. (Krupinski Dep. 30, 120; Krupinski Suppl. Decl. ¶ 16, ECF No. 159-11.)

have a non-compete agreement for Ridgeway. (McKay Decl. ¶ 3.) He also recalls a few occasions when he acknowledged and concurred with Ridgeway's assertion that he did not have a non-compete agreement. (*Id.*) Jason Barnett recalls Ridgeway telling him during multiple conversations that he did not have a non-compete and Barnett "probably agreed with him." (Barnett Dep. 14, Case No. 14-889, ECF No. 60-1.) Jason Mayfield, Ridgeway's manager, testified that in 2005, Shane Partington, the HR director, told him Ridgeway did not have a non-compete. (Mayfield Dep. 84, ECF No. 386-7.)

Stryker's assertion that there is no dispute of fact regarding the non-compete agreement ignores significant evidence already in the record that clearly raises issues of fact for trial. Stryker has explanations for much of the evidence Ridgeway relies on: that Krupinski had only been on the job a short time when she said there was no non-compete, that the non-conforming agreements were outside of the 2001-2005 time frame or were for salesmen in different divisions, or that the salesmen without non-competes were hired outside the 2001-2005 time frame. Nevertheless, a jury is not required to accept Stryker's explanations. A reasonable factfinder would not be required to find that Ridgeway signed the document Plaintiffs contend he signed. Ridgeway's evidence is sufficient to raise issues of fact for trial on the existence and terms of the alleged non-compete agreement.

Under LUTPA, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. La. Rev. Stat. § 51:1405. "Conduct is considered unlawful when it involves fraud, misrepresentation, deception,

7

breach of fiduciary duty or other unethical conduct." *Nursing Enters., Inc. v. Marr*, 719 So. 2d 524, 528 (La. Ct. App. 1998). "A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition." *Id.*

The elements of a claim of fraudulent misrepresentation under Louisiana law are: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury." *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1145 n.33 (5th Cir. 1988), *vacated on other grounds sub nom. Fryar v. Abell*, 492 U.S. 914 (1989).

Ridgeway's LUTPA and Louisiana fraud claims (Counts I & II) are based on his contention that Stryker committed an affirmative act of deception when it redacted the name of one individual from a contract, then attached the contract to a copy of a faxed signature page of Ridgeway, and claimed that it was a true and correct copy of a genuine contract with Ridgeway. Ridgeway further contends this was done to deceive Biomet into believing that the alleged contract filed with the original complaint was genuine and to induce Biomet to cease doing business with Ridgeway. (Countercl. ¶¶ 55-60, ECF No. 76.)

Stryker has moved for summary judgment on Ridgeway's LUTPA and fraud claims based on its contention that there is no evidence of a deceptive act, and no evidence of an intent to deceive.

Viewing the evidence and drawing all reasonable inferences in the light most favorable to Ridgeway, the Court is satisfied that Ridgeway has presented sufficient evidence

8

to create issues of fact regarding the existence and terms of the alleged non-compete agreement, whether Stryker's claim that Ridgeway had a non-compete agreement was false, the manner in which the non-compete agreement was re-created, and Stryker's motivation for asserting rights under a non-compete agreement with Ridgeway. Summary judgment is generally not well suited for cases in which motive and intent are at issue and in which one party is in control of the proof. *Perry v. McGinnis*, 209 F.3d 597, 600 (6th Cir. 2000). This is such a case. Accordingly, Stryker's motion for summary judgment on Ridgeway's LUTPA and Louisiana fraud claims will be denied.

**B. Defamation**

Ridgeway asserts in Count V of his counterclaim that Stryker defamed him to former customers and other third parties following his termination. (CounterCl. ¶ 73.) Stryker contends that it did not defame Ridgeway, and that Ridgeway has no competent evidence that it did.

Whether the Court applies Michigan or Louisiana law, the elements of defamation are the same:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005); *see also Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004) (listing same four elements). Because there is no conflict in the

9

laws of the two states, the Court will apply the law of Michigan, the forum state. *See New Hampshire Ins. Co. v. Carleton*, 502 F. App'x 478, 481 (6th Cir. 2012) (holding that where there is no meaningful difference between the laws of the two states, the court does not undertake a choice-of-law analysis); *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005) (applying law of the forum state where there was no conflict of laws).

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Sawabini v. Desenberg*, 372 N.W.2d 559, 563 (Mich. Ct. App. 1985). The falsity requirement is met only if the statement in question makes an assertion of fact, that is, an assertion that is capable of being proved objectively incorrect. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015).

In response to Stryker's motion, Ridgeway has identified the evidence he is relying on in support of his claim that Stryker set out on a "scorched earth" campaign to destroy his reputation in the medical community. Stryker contends Ridgeway's evidence is not competent to support his defamation claim as a matter of law, either because it merely expresses an opinion, it was a privileged communication among employees of the corporation, it was a republication of a news article, or it was supported by nothing more than Ridgeway's own hearsay statements.

Stryker is correct with respect to some of Ridgeway's evidence. For example,

Cameron's September 8, 2013, email to other Stryker employees merely contains an agenda for a telephone call meeting. (ECF No. 393-2.) The email is not defamatory because it does not contain any facts that are provable as false, and it is likely a privileged communication within the Stryker organization. *See Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1134 (W.D. Mich. 1997) ("[A]n employer has the qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter.").

To the extent Ridgeway's claims are supported only by his own declaration regarding what people at Stryker allegedly told people at various hospitals about Ridgeway (ECF No. 393-4), the evidence is inadmissible hearsay. With respect to his claim that Stryker told Our Lady of the Lake Hospital that Ridgeway had cheated them for years through a fraudulent overstocking scheme, Ridgeway has supported this claim with evidence that Stryker offered cash credits to the hospital for excess inventory. Ridgeway contends that Stryker must have defamed him, or it would not otherwise have offered cash credits to the hospital. Ridgeway's circumstantial evidence does not satisfy Ridgeway's burden of producing evidence that Stryker made a defamatory statement. *See Cole v. Knoll, Inc*., 984 F. Supp. 1117, 1134 (W.D. Mich. 1997) (holding that the plaintiff had not established a triable issue of fact where his assertions of defamation were vague and he could not pinpoint any particular statement made by any particular person); *see also Forth v. Kroger*, No. 09-CV-13458, 2010 WL 3937314, at *4 (E.D. Mich. Oct 5, 2010) (holding that employer could not be held responsible for mere rumors without more specific facts linking persons with corporate

11

authority to the dissemination of those rumors).

To the extent Ridgeway complains that Stryker employees disseminated defamatory media articles about him, he has not provided sufficient evidence to suggest that the forwarding of the published article involved circumstances sufficient to bring it within the narrow republication exception to the single publication rule. *See Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 504 (6th Cir. 2015); *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 914 (W.D. Ky. 2009).

Not all of Ridgeway's evidence, however, can be so readily dismissed. For example, Ridgeway has presented an email from Lauren Border to andreadmunoz@sbcglobal.net forwarding Cameron's memorandum regarding Ridgeway's "fraudulent and disruptive activities." (ECF No. 395-2.) The attached memorandum contains many potentially defamatory statements about Ridgeway, including statements that he "abandoned his fiduciary duties," "sabotaged Stryker's hiring process," acted as a "Corporate Raider," passed internal confidential material to Biomet, and may have used Stryker funds for his own endeavors. (*Id.*)

Stryker contends that Border's email is not competent to show defamation because Ridgeway has not identified the recipient, Ridgeway does not dispute the truth of any statement made within the email, and Ridgeway does not identify any intent by Border to harm him.

On summary judgment "the evidence must be viewed, and all reasonable inferences

drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Because the email is not to a Stryker business address, a reasonable inference can be drawn that the email is to a third party. Moreover, Ridgeway has asserted in his declaration that Stryker's assertions that he had engaged in numerous acts of deception and thievery were patently untrue. (Ridgeway Decl. ¶ 4.) Whether Stryker is at fault amounting at least to negligence for disseminating the document is a question of fact for trial.

Ridgeway has also presented evidence that David Mercado, the Vice President and General Manager of Stryker CMF, told Stryker managers that Ridgeway had created a business environment to poach and destroy the Stryker business and that he had been a bad guy, (Burt Kiper Decl. ¶¶ 5-6, ECF No. 393-7), and that Alan Youngblood told Burt Kiper, a regional manager for Stryker CMF, that Ridgeway had an elaborate billing mechanism at one of his hospitals that enabled him to receive payment/commission twice on the same bill. (*Id.* at ¶ 7.)

Stryker contends that these statements do not satisfy Ridgeway's burden because Ridgeway has not denied their truth, the statements are matters of opinion, and there is no defamation for intercorporate communications. As previously noted, Ridgeway has denied the truth of Stryker's statements regarding his deception and thievery. (Ridgeway Decl. ¶ 4, ECF No. 393-4.) Moreover, not all statements of opinion are protected. *Ireland v. Edwards*,

13

584 N.W.2d 632, 637 (Mich. Ct. App. 1998). To be actionable, a statement must be "provable as false." *Id.* (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Although the statement that Ridgeway was a "bad guy" is a matter of opinion, Kiper's declaration contains more specific allegations that could constitute defamation. In addition, whether the statements are privileged employer communications presents a question of fact. An employer does not have an absolute privilege to defame an employee to other employees. The privilege is qualified:

> The courts recognize this privilege because employers are obviously required to discuss and investigate allegations of wrongdoing by their employees. Supervisory employees have an undoubted need to comment to each other on the qualifications, morals, and work habits of employees.

*Cole*, 984 F. Supp. at 1134. Michigan courts presume that such discussions are done in good faith and with proper motive, *id.*, but the presumption can be overcome.

Ridgeway has presented evidence that Hunter Cameron told a customer that Ridgeway's actions were "unforgivable and went against all of our company's core principles." (Cameron email, ECF No. 393-6.) Stryker contends this statement is not actionable because it is a statement of opinion. While the "unforgivable" statement is not actionable, the statement that Ridgeway's actions went against Stryker's core principles is actionable because it is provable as false.

For the reasons stated above, the Court finds that although Ridgeway does not have as much evidence of defamation as he claims, he has come forward with enough evidence to defeat Stryker's motion for summary judgment on his defamation claim.

### C. Promise/induce action re Non-compete

In Count VII, Ridgeway claims detrimental reliance under Louisiana and Michigan law. Ridgeway alleges, in support of this claim, that Stryker repeatedly told him he had **no** non-compete agreement, and that he relied on this representation when he entered into the agreement to work on behalf of Biomet.

In a previous opinion, this Court noted that although Michigan did not recognize a claim for detrimental reliance, the Court would interpret Count VII as a claim for promissory estoppel under Michigan law. (Op. 22-23, ECF No. 330.) Because Ridgeway did not identify a conflict between a Louisiana detrimental reliance claim and a Michigan promissory estoppel claim, the Court analyzed Count VII under the Michigan law of promissory estoppel. (*Id.* at 23-25.) Although Ridgeway continues to assert that Louisiana law applies to his detrimental reliance claim, he has not attempted to demonstrate a conflict between Louisiana and Michigan law, nor has he persuaded the Court that Michigan courts would apply Louisiana law. Nevertheless, because the analysis is not materially different under Louisiana or Michigan law, the Court rejects Stryker's assertion that Ridgeway has abandoned his promissory estoppel claim under Michigan law. (See Stryker Reply 5, ECF No. 417.)

In the alternative, Stryker moves for summary judgment on Count VII based on its contention that there is no evidence that Stryker promised Ridgeway that he did not have a non-compete or that Stryker intended to induce action on Ridgeway's part.

15

The elements of a claim of promissory estoppel under Michigan law are:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.

*Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999).

Stryker's assertion that there is "no evidence" to support Ridgeway's claim is disingenuous. As noted above, Sarah Krupinski in the HR department admitted telling Ridgeway in 2012 that she did not see a non-compete agreement in his file, and followed that up with an email confirming that he did not have a non-compete on file. (Krupinski Dep. 30-32, ECF No. 351-5; ECF No. 352-1.) In addition, Ridgeway has presented evidence that Robert McKay, Jason Barnett, and Jason Mayfield, all told him he did not have a non-compete agreement. (McKay Decl. ¶ 3; Barnett Dep. 14, Case No. 14-889, ECF No. 60-1; Mayfield Dep. 84, ECF No. 386-7.) Ridgeway has also presented evidence that he relied on representations by Hunter Cameron, Sarah Krupinski, Susie Farrell, Jason Mayfield, Rob McKay, Mike Van Vleet and other Stryker superiors that he did not have a non-compete agreement, and that he would not have pursued employment with Biomet if he thought he had a non-compete agreement. (Ridgeway Decl. ¶ 15, ECF No. 386-13.)

Whether Stryker superiors or Human Resources personnel told Ridgeway he did not have a non-compete agreement and whether they should reasonably have expected to induce action on Ridgeway's part are questions of fact for trial.

Stryker also contends that Ridgeway's claim fails because he was a party to the non-

compete agreement, and could not rely on a purported statement that he did not have an agreement when he knew or should have known that he did. This argument assumes that Ridgeway had a non-compete agreement, and, as noted above, there are issues of fact that preclude the Court from making such a finding. For all these reasons, the Court denies Stryker's motion for summary judgment on Ridgeway's promissory estoppel claim.

## IV.

For the reasons stated above, Stryker's motion for summary judgment on Ridgeway's counterclaims (ECF No. 349) will be denied.

An order consistent with this opinion will be entered.


Dated: <u>December 1, 2015</u>   /s/ Robert Holmes Bell
                                                                                             ROBERT HOLMES BELL
                                                                                             UNITED STATES DISTRICT JUDGE