UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

Plaintiffs,

v.                                              Case No. 1:13-CV-1066

                                                HON. ROBERT HOLMES BELL
CHRISTOPHER RIDGEWAY, et al.,

Defendants.

and

STONE SURGICAL, LLC,

Plaintiff,

v.

                                                Case No. 1:14-CV-889
STRYKER CORPORATION, et al.,

Defendants.
_____/

## O P I N I O N

This matter involves two cases that were consolidated for a significant part of discovery and then for trial. In Case No. 1:13-cv-1066, Plaintiffs Stryker Corporation and Howmedica Osteonics Corp. (collectively, "Stryker") sued a former employee, Defendant Christopher Ridgeway. In Case No. 1:14-cv-889, Stone Surgical, LLC ("Stone"), a company wholly owned by Ridgeway, sued Stryker. The two cases addressed related issues. Among other things, Stryker claimed that Ridgeway did not comply with the terms of his non-compete and confidentiality agreements, and breached his fiduciary duties to Stryker by:

entering into an agreement to sell the products of Stryker's competitor, using Stryker's confidential pricing information to sell competing products to Stryker customers, and causing Stryker's customers to overstock Stryker products for his own benefit. Ridgeway counterclaimed that Stryker fraudulently represented that he was bound by a non-compete agreement, and made defamatory statements about him to his customers, which harmed his reputation. (*See* Counterclaim, ECF No. 76.) In its action, Stone claimed that Stryker committed fraud and engaged in unfair trade practices by representing that Ridgeway was a party to a non-compete agreement with Stryker, causing Stone to lose a distributorship arrangement with Stryker's competitor. Stryker obtained a jury verdict in its favor on its claims, but Ridgeway's counterclaims and Stone's claims were not successful. After judgment was entered, Ridgeway filed for bankruptcy, resulting in an automatic stay of further proceedings against him.

Before the Court is Stryker's motion for a bill of costs against Stone (ECF No. 754),[1] and Stone's objections thereto (ECF No. 760). Stryker seeks costs in the amount of $143,085.29 under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. These costs include: (1) $713.00 for service of summonses and subpoenas; (2) $43,915.24 for depositions costs; (3) $3,094.05 for hearing transcripts; (4) $480.42 for costs paid to

---

[1]The ECF numbers referenced in this order are from the docket in Case No. 1:13-cv-1066.

witnesses to attend trial or depositions; (5) $34,866.30 for exemplification and copying; and (6) $57,972.50 for presentation of evidence at trial.

## I.

Rule 54(d) provides that costs other than attorney's fees "should be allowed to the prevailing party" unless a federal statute, rule or court order states otherwise. Fed. R. Civ. P. 54(d). The Rule "creates a presumption in favor of awarding costs, but allows denial of costs" in the court's discretion. *Knology, Inc. v. Insight Commc'ns Co.*, 460 F.3d 722, 726 (6th Cir. 2006) (quoting *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001)). "Before the district court, 'it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption' favoring an award of costs to the prevailing party." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986); (quoting *Lichter Found., Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959)).

"The court has broad discretion in allowing or disallowing the particular items listed in § 1920 as costs." *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 419 (6th Cir. 2005), abrogated on other grounds in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012). "In reviewing a request for taxation of costs, a court must look 'first to whether the expenses are allowable cost items and then to whether the amounts are reasonable and necessary.'" *Whirlpool Corp. v. LG Electronics, Inc.*, 2007 WL 2462659, at *1 (W.D. Mich. Aug. 26, 2007) (quoting *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 591 (6th Cir. 2004)). "The prevailing party has the burden of establishing that the expenses it seeks to have taxed as costs 'are authorized by applicable federal law, including proof of necessity

3

and reasonableness under 28 U.S.C. § 1920.'" *Id.* (quoting *Berryman v. Hofbauer*, 161 F.R.D. 341, 344 (E.D. Mich. 1995)). Once the prevailing party makes this showing, the burden shifts to the losing party to show the impropriety of taxing these costs. *BDT Prods.*, 405 F.3d at 419-20.

"The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007). Section 1920 provides that a judge or any clerk of the United States may tax as costs the following: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; [and] (5) Docket fees . . . ." 28 U.S.C. § 1920. The Court has authority to act on a motion for costs where, as in this case, the clerk has not taken action on it. *BDT Prods.*, 405 F.3d at 418-19.

## II.

### A. General Objections

#### 1. Equity / Proportionality

First, Stone generally objects on the basis that it would be inequitable to tax any costs because Stryker is a large corporation that "exceeded all bounds of proportionality in pursuing its Judgment of $745,195 against Christopher Ridgeway, causing him to file for bankruptcy." (Objections to Mot. for Bill of Costs 3, ECF No. 760.) This argument has no force because Stryker's motion seeks to tax Stone, not Ridgeway.

4

2. <u>Relationship to Stone's claims</u>

Second, Stone objects to certain costs because they are related to Stryker's claims against Ridgeway rather than Stone's claims against Stryker. For instance, Stryker seeks to recover costs to subpoena and execute service of summons on Ochsner Health Clinic ("Ochsner"). But Stone contends that the "sole issue" in its case was whether Ridgeway's non-compete agreement with Stryker was valid, and that discovery related to Ochsner had nothing to do with that issue. (*Id.* at 4.) Similarly, Stryker seeks deposition and subpoena costs for Our Lady of the Lake Regional Hospital ("OLOL"), but Stone claims that this discovery was solely related to Ridgeway's conduct and had nothing to do with the validity of the non-compete agreement. Stone raises similar objections about witness and deposition fees for Angela Barker, William Cruikshank, GoDaddy, Samuel McWilliams, Lindsey Lawson, Sheldon Green, Julie Winans, and Michael Carter. Stryker responds that the prosecution of its claims against Ridgeway and its defense against Stone's claims were intertwined. Stryker asserts that it seeks only those costs that were necessitated by the defense against the claims made by Stone, including Stone's claim that Stryker's conduct prevented Stone from conducting business with hospitals in the Louisiana market.

Stone is correct that the primary focus of its lawsuit was the validity of the non-compete agreement between Stryker and Ridgeway. In order to show that Stryker improperly interfered with its business relationships with Stryker's competitor, Stone tried to show that Stryker had created a false non-compete agreement between Stryker and Ridgeway. But Stryker is also correct that the validity of the non-compete agreement was not the only area

in which Stone's lawsuit against Stryker overlapped with Stryker's lawsuit against Ridgeway. Another area of overlap concerned the amount of damages that Stone allegedly sustained as a result of Stryker's conduct. Stone's damages expert, Harold Asher, made an estimate of the future revenue that Stone could have obtained in the Louisiana market if Stone had been able to continue selling the products of Stryker's competitor. In making his calculations, Asher treated Stone and Ridgeway as one in the same. (*See* Trial Tr. IX at 1544, ECF No. 772; Trial Tr. VIII at 200, ECF No. 771.) In other words, Stone's future revenues were dependent upon Ridgeway's ability to sell products to Louisiana hospitals. When criticizing Asher's calculations, Stryker's damages expert, Walter Bratic, speculated that Stone's ability to obtain new business in the future would be hampered by the reputational harm that Ridgeway suffered as a result of his conduct at OLOL and other hospitals in Louisiana. (Bratic Rebuttal Rep. 36-37, ECF No. 506-1.) Consequently, Ridgeway's conduct with Stryker customers like OLOL was relevant to Stryker's claims against Ridgeway, and to Stone's claim for damages against Stryker.

On the other hand, as Stryker's motion implicitly recognizes, not all of the issues in the case against Ridgeway were relevant to the case filed by Stone. Consequently, not all of the costs that Stryker incurred in this litigation are related to Stone's claims or defenses. Stone should not be required to reimburse Stryker for costs related solely to the case involving Ridgeway. Thus, the Court will not tax costs against Stone to the extent that they apply solely to the lawsuit involving Ridgeway.

Moreover, even where the costs incurred apply to Stone's lawsuit, the Court will not tax Stone for all of these costs. All of the issues at stake in Stone's lawsuit were also relevant to the lawsuit against Ridgeway. Ridgeway asserted many counterclaims against Stryker that were essentially the same as the claims that Stone asserted against Stryker. Thus, any costs that Stryker incurred defending against Stone's claims were also relevant to its defense against Ridgeway's counterclaims and to the issues at stake in its lawsuit against Ridgeway. Stone should not be required to shoulder the burden of all of these costs. Although Ridgeway and Stone are closely entwined, shared common interests, asserted parallel claims, and were treated as one and the same for purposes of Stone's claim for damages, they are legally distinct, and the Court will treat them as such when taxing costs. Thus, as a general matter, the Court will not tax more than half of the costs claimed by Stryker in its motion. When the stay is lifted, Stryker can seek the other half from Ridgeway.

### C. Fees for Service of Summonses/Subpoenas

Stryker seeks $731.78 for fees to serve summonses and issue subpoenas on various witnesses and entities. Stone objects to the fees related to Ochsner, OLOL, William Cruikshank, GoDaddy, and Angela Barker.

#### 1. Ochsner & OLOL

Stone objects to costs related to Ochsner and OLOL, arguing that they are not related to Stone's lawsuit. As indicated above, witnesses for the Louisiana hospitals that Ridgeway serviced on behalf of Stryker, including Ochsner and OLOL, were relevant to defend Stone's claim for damages. Thus, Stryker is entitled to recover at least half of these fees from Stone.

### 2. William Cruikshank

Stone also objects to costs related to William Cruikshank, but Stryker notes that Cruikshank testified about the existence of Ridgeway's non-compete agreement and his conduct at OLOL. Thus, those costs are relevant to Stone's lawsuit.

### 3. GoDaddy

Stone objects to costs related to the service and subpoena of GoDaddy, an entity who maintained some of Ridgeway's and/or Stone's emails. Stryker attempted to obtain information from GoDaddy in order to determine the extent of Ridgeway's and Stone's business. Ridgeway had e-mailed a pricing proposal to OLOL for Biomet products, and he claimed that he no longer possessed a copy of the email because GoDaddy deleted them. Stryker sought more information from GoDaddy. Although this information was primarily sought for the purpose of determining whether Ridgeway had breached his non-compete agreement, it was also relevant to determine the extent of Stone's current and/or future business with Stryker customers and, thus, the extent of damages that could be claimed by Stone in its action. Furthermore, the Court sanctioned both Stone and Ridgeway for failing to provide relevant discovery regarding Ridgeway's emails. (2/16/2016 Mem. Op. & Order, ECF No. 703.) Thus, the costs associated with GoDaddy are relevant to Stone's case.

### 4. Angela Barker

Stone raises a similar objection to the costs related to subpoena, service, and witness fees for Angela Barker. Stryker does not attempt to justify these costs, other than to rely upon an affidavit that all of its claimed costs were "necessarily incurred." The Court cannot

ascertain the necessity of these costs for the Stone lawsuit. Thus, the Court will not allow them to be taxed against Stone.

Stryker contends that Stone has not met its burden of overcoming the presumption that costs should be awarded, but the issue in this instance is not whether Stryker is entitled to these costs; rather, the issue is who should pay for them, Stone or Ridgeway.

After removing the costs for Angela Barker ($75.00), the total service fees are $656.78. Half of these costs will be taxed against Stone. Thus, the Court will tax $328.39.

### C. Witness Fees

Stryker seeks $480.82 in witness fees. After removing the fees for Angela Barker ($125.00), the remaining costs are $355.82. The Court will tax half of these costs against Stone, which is $177.91.

### D. Fees for Printed or Electronically Recorded Transcripts Necessarily Obtained

Stryker seeks $43,915.24 in deposition-related costs. *See* 28 U.S.C. § 1920(2). Stone objects to the costs for Angela Barker, Samuel McWilliams, Lindsey Lawson, Sheldon Green, Julie Winans, and Michael Carter, because these witnesses were not related to Stone's case. Stryker does not attempt to justify the costs for Barker, Lawson, McWilliams, and Green, and the Court cannot ascertain their relation to Stone's case. In contrast, Winans and Carter were questioned about the existence of Ridgeway's non-compete agreement. (Carter Dep. 11-14, ECF No. 777-4; Winans Dep. 11-13, ECF No. 777-5.) Thus, costs associated with Carter and Winans will be taxed against Stone, but the costs for Barker, McWilliams, Lawson and Green will not.

Stone also objects to the costs related to the depositions of Todd Wolf, James Fox, Carter, and Winans, because neither these witnesses nor their deposition testimony were presented at trial. Stone contends that these depositions were purely investigatory. However, Stone and Ridgeway identified Wolf, Fox, Carter, and Winans as fact witnesses shortly before trial. (Ex. G to Pretrial Order, ECF No. 603, PageID.15208-10.) In addition, Fox's deposition transcript was relied upon by Stone's expert, and was brought up at trial during cross-examination. (Trial Tr. IX at 13, ECF No. 772.) Thus, it cannot be the case that the depositions of these witnesses were conducted solely for investigative purposes.

Stone also contends that Stryker cannot seek costs for both stenographic and video depositions, citing *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996). But *Morrison* holds that it is appropriate to tax costs according to *the manner in which the deposition is noticed*, even if it is by "both stenographic and nonstenographic means," when no objection is raised at the time as to the method of recording. *Id.* Thus, *Morrison* does not hold that a court cannot tax costs for both stenographic and video depositions. Applying *Morrison* to this case, Stone's counsel (who also represented Ridgeway) noticed the depositions of Winans and Carter as "video and stenographic[.]" (ECF No. 777-2.) Thus, both types of costs can be taxed against Stone. Moreover, in the Sixth Circuit it is proper to tax the cost of "videotaping and transcribing a deposition." *BDT Prods.*, 405 F.3d at 420. Thus, Stone's argument is without merit.

Finally, Stone contends that video depositions were taken of a number of witnesses, yet the videos were never presented at trial because the witnesses testified live, including:

Sarah Krupinski, Jason Barnette, Melissa Lewis, Michael Van Vleet, Suzanne Farrell, David Mercado, Lauren Border, Jason Mayfield, Brett Baird, Hunter Cameron, Walter Bratic, and William Flynn. Stone contends that the video recording was merely for the convenience of counsel.

Necessity for deposition costs is determined "'as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling.'" *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-cv-679, 2010 WL 1875508, at *1 (W.D. Mich. May 10, 2010) (quoting *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989)). In *Sales*, the Sixth Circuit noted that "subsections (2) and (4) of § 1920 have been interpreted to authorize taxing as costs the expenses of taking, transcribing and reproducing depositions." *Sales*, 873 F.2d at 120. The court further noted that "the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Id.* In *Whitesell*, this Court permitted a party to tax the cost of deposition transcripts under 28 U.S.C. § 1920(2), even though the witnesses deposed did not testify at trial, because the defendant "could have reasonably believed that each of its . . . witnesses would play an integral role in the resolution of the case." *Whitesell*, 2010 WL 1875508, at *2. Similarly, Stryker could not have known at the time of the deposition whether it would be necessary for all of the deposed witnesses to testify at trial. Indeed, several other witnesses were presented solely by their video deposition. The Court cannot say that the video depositions of the aforementioned witnesses were not necessarily obtained for use in the case.

11

After subtracting the costs for Barker, McWilliams, Lawson, and Green ($6,229.91), the remaining costs are $37,685.33. The Court will tax half of these costs against Stone, which is $18,842.66.

### E. Fees for Hearing Transcripts Necessarily Obtained

Stryker seeks $3,094.05 in costs for hearing transcripts of discovery motions. Stone claims that these transcripts relate entirely to the case against Ridgeway, and that none of them relate to Stone. A review of the transcripts indicates otherwise. Stone's attorneys appeared at each of these hearings, on behalf of both Ridgeway and Stone. Sometimes the hearings involved a motion filed by Stone itself (*see* 5/4/2015 Mot. Hr'g Tr., ECF No. 485), but more often the hearings involved motions that implicated both Ridgeway's and Stone's interests in the litigation (*see, e.g.*, 3/17/2015 Mot. Hr'g Tr., ECF No. 199, PageID.4019; 4/10/2015 Mot. Hr'g Tr., ECF No. 266, PageID.5378; 6/1/2015 Mot. Hr'g Tr., ECF No. 284, PageID.6302).

For instance, Ridgeway filed a motion to compel documents related to the non-compete agreement that Ridgeway signed (ECF No. 106). This motion was considered at a hearing on January 2, 2015, for which a transcript was ordered by Stryker (ECF No. 148). Although Ridgeway filed the motion, not Stone, the motion was filed for the purpose of obtaining evidence regarding the validity of the non-compete agreement, and this evidence was relevant both to Stone's lawsuit and to Ridgeway's defenses and counterclaims. Thus, the transcript was related to both cases. On the other hand, Stone is correct that many of the

12

hearings are predominantly about the case against Ridgeway. Consequently, the Court will tax Stone for half of the costs claimed, which is $1,547.02.

### F. Fees and Disbursements for Printing

Stryker seeks $8,106.72 in costs for printing trial exhibits and documents for production to opposing counsel. Stone does not object to any specific aspect of these costs. The Court will tax half of the costs claimed, which is $4,053.36.

### G. Other Costs: Electronic Presentation of Evidence at Trial

Stryker seeks $2,025.00 for the cost of encoding and syncing video depositions for presentation at trial. Stone objects that the video of one of these witnesses, Pedrina Blouin, should not be taxed because that video was never presented at trial. But Stryker could have reasonably believed that Blouin's testimony would be necessary for its case, to establish the nature of Ridgway's misconduct at OLOL. Indeed, Stryker listed her as a possible witness for trial, and the admissibility of much of her testimony was in question until very near the end of the trial, when the Court determined that it was hearsay. (*See* 2/24/2016 Order, ECF No. 719.) Consequently, the Court finds that the cost of encoding and syncing her testimony can be taxed. *See Kalitta Air, LLC v. United Air Lines, Inc.*, 2012 WL 4479133, at *3 (E.D. Mich. Sept. 28, 2012) (awarding costs for syncing video transcripts).

After removing the costs for Barker, Lawson, and McWilliams ($675.00), the remaining costs are $1,350.00. The Court will tax half of these costs, which is $675.00.

### H. Other Costs: Exemplification and Copying Costs

Stryker seeks $26,759.58 for "exemplification and copying costs," which are described in its bill of costs as "Relativity processing and migration and OCR processing[.]" (ECF No. 755-7, PageID.17927.) In its motion, Stryker contends that these costs include those associated with "scanning hard copying documents, converting native files to TIFF format (the agreed-upon format [for] production in this case) and the scanning of paper documents to create digital duplicates for production in discovery[.]" (Br. in Supp. of Mot. 7, ECF No. 755.) Stryker notes that its vendor hosted the documents produced by all parties during discovery "in a searchable format," though Stryker contends that it does not seek to recover the costs associated with hosting the documents. (*Id.*) Stone objects that Stryker's costs are unsubstantiated and that most of them occurred years before trial, without any explanation as to why they were necessary, justified, or related to Stone.

As to necessity, it is sufficient that Stryker has attached a declaration that the costs were necessarily incurred for use in the case. *See BDT Prods.*, 405 F.3d at 420 (relying on a similar declaration). As to timing, $2,876.52 of the costs claimed by Stryker were incurred prior to November 1, 2013, when Stone filed its lawsuit against Stryker. These costs cannot be related to Stone's lawsuit, and will not be taxed against Stone. On the other hand, the Court cannot discern a basis for Stone's objection that any of the other costs should be excluded merely because they were incurred long before trial.

Of the remaining costs, some are covered by § 1920 and some are not. Taxing costs for scanning paper and electronic imaging of materials is permitted by § 1920(4). *BDT Prods.*, 405 F.3d at 420. But Stryker seeks to recover more than the cost of scanning and

14

imaging. OCR (optical character recognition) processing involves the conversion of an image into a format containing searchable text. Processing electronic images and extracting information is not "copying" or "exemplification." *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 258-62 (4th Cir. 2013). This Court has specifically held that costs associated with optical character recognition are not taxable. *El Camino Resources, Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598, 2012 WL 4808741, at *6 (W.D. Mich. May 2, 2012), adopted as opinion of court, 2012 WL 4808736 (W.D. Mich. Oct. 10, 2012) (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165-67 (3d Cir. 2012)). Similarly, other courts have refused to tax costs associated with the use of the Relativity software to process documents and make them useful for discovery. *Massuda v. Panda Express, Inc.*, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) ("[C]osts related to the gathering, preserving, processing, searching, culling and extracting of [electronically stored information] simply do not amount to making copies and thus are non-taxable.") (internal quotation marks and citation omitted) (adopting the position in *Race Tires*).

Due to the inclusion of costs related to processing and converting documents into a searchable format, and the lack of meaningful[2] information to distinguish the cost of scanning documents from the cost of processing them, Court will reduce the remaining costs,

---

[2]According to Plaintiff's receipts, the largest portion of the costs are for "Relativity processing," and "Relativity migration." (*See, e.g.*, ECF No. 757-6, PageID.18096.) "Processing" and "migration" have no clear connection to copying or exemplification.

$25,883.06, by half, resulting in $12,941.53. The latter amount will be reduced by another half to fairly allocate costs between Stone and Ridgeway, resulting in $6,470.76.

### I. Other Costs: DecisionQuest Trial Graphics

Stryker seeks $57,972.50 in costs for its vendor to prepare and display trial exhibits during the trial. As noted above, 28 U.S.C. § 1920(4) provides recovery for "[f]ees for exemplification . . . necessarily obtained for use in the case." Stone objects to all of these costs as unnecessary. Stone asserts that, while the services obtained might have been helpful for Stryker's case, they exceeded the bounds of necessity. Stone contends that the Court should reduce these costs to reflect what was "necessary" for a trial presentation rather than a "digital enhancement" of trial evidence. (Objections 9, ECF No. 760.)

In *Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000), the Court of Appeals for the Seventh Circuit held that the cost of preparing and presenting multi-media presentations can qualify as an exemplification cost. *Id.* at 428. To evaluate its necessity, the Court can consider whether "the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, was the exemplification vital to the presentation of the information, or was it merely a convenience or, worse, an extravagance?" *Id.* at 428-29.

In this case, the most hotly-contested piece of evidence was a copy of a faxed signature page to a non-compete agreement signed by Ridgeway. Many of the parties respective claims, counterclaims, and defenses turned on whether Ridgeway was bound by a non-compete agreement with Stryker. Stryker relied, in part, on a small control number on

16

the signature page as well as the page number at the bottom of the signature page to show that the signature page corresponded to its form non-compete agreement. Aided by the testimony of an expert in document forensics, Stone and Ridgeway attempted to show that the signature page was not genuine by comparing the alignment of the control number with other text on the page, and by construing one of the numbers on the page, which had been distorted by fax transmission, as different from the corresponding number on Stryker's form non-compete agreement. Thus, a multi-media presentation was reasonably necessary to present key evidence in an enlarged format on the Court's monitors so that the jury could assess it. *See id.* at 428 ("Enlarging a document may be the only practical means of permitting a witness to point out the forensic features of that document."). Moreover, the Court's overall impression is that Stryker's presentation was relatively simple and functional. It aided the presentation of useful information and trial exhibits to the jury, rather than attempting to "wow" them with unnecessary graphics and "glitz." *Id.* at 428. Thus, the Court is satisfied that Plaintiff's multi-media presentation was "necessarily obtained."

On the other hand, the Court finds it hard to justify the sum of the costs incurred. $58,000 is an extraordinary sum for such a presentation. Stryker's vendor, the "nation's leading trial consulting firm,"[3] charged up to $300 per hour for its assistance. Moreover, some of the costs claimed appear to stray from the limited scope of exemplification costs allowed in this Circuit, including project planning and Bates stamping of documents. Consequently, the Court will not tax more than two-thirds of the amount claimed, with Stone responsible for half of that amount, i.e., $19,324.17.

After making the foregoing adjustments, the total amounts allowed are as follows:

---

[3]*See* http://www.decisionquest.com/ (accessed October 26, 2016).

| Description | Cost |
|---|---|
| Fees for Service of Summonses/Subpoenas | $328.39 |
| Witness Fees | $177.91 |
| Fees for Printed or Electronically Recorded Transcripts | – |
|   Depositions | $18,842.66 |
|   Hearing Transcripts | $1,547.02 |
| Fees and Disbursements for Printing | $4,053.36 |
| Electronic Presentation of Evidence at Trial | $675.00 |
| Exemplification and Copying Costs | $6,470.76 |
| DecisionQuest Trial Graphics | $19,324.17 |
| **Total** | **$51,419.27** |

An order will be entered consistent with this Opinion.


Dated: October 27, 2016                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE